Edward LECCI, Individually and as Representative of the Nassau County Patrolmen's Benevolent Association, Plaintiff-Appellee,

v.

William CAHN, District Attorney of Nassau County of the State of New York, and Francis B. Looney, Commissioner of Police, Nassau County of the State of New York, Defendants-Appellants.

No. 409, Docket 73–2087.

United States Court of Appeals, Second Circuit.

Argued Jan. 28, 1974.

Decided Feb. 25, 1974.

Allen R. Morganstern, Mineola, N. Y. (Richard Hartman, Mineola, N. Y., on the brief), for plaintiff-appellee.

Natale C. Tedone, Deputy County Atty., Nassau County (Joseph Jaspan, County Atty., Biagio F. Giaquinto, Sr. Deputy County Atty., Nassau County, of counsel), for defendants-appellants.

A. Seth Greenwald, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., Constance B. Margolin, Deputy Asst. Atty. Gen., of counsel), for intervenor-appellant.

Before WATERMAN and MULLIGAN, Circuit Judges, and BRYAN, District Judge.*

MULLIGAN, Circuit Judge:

The plaintiff individually, as a member of the Nassau County Police Department, and in his representative capacity as President of the Nassau County Patrolmen's Benevolent Association, commenced an action in the United States District Court for the Eastern District of New York on July 4, 1970, seeking a declaration that N.Y. Election Law § 426(3) (McKinney's Consol.Laws, c. 17 Supp.1973) [1] is unconstitutional, and an injunction restraining the defendants from promulgating and enforcing similar legislation. On September 4, 1970, the defendants moved for an order dismissing the complaint and granting summary judgment pursuant to Fed.R. Civ.P. 56(b), on the ground that the court lacked subject matter jurisdiction, that the matter had been previously adjudicated in New York Supreme Court and finally that the complaint failed to state a claim for which relief could be granted. A stipulation was entered into on September 9, 1970, which provided that the defendants' motion to dismiss be denied, that the district court would retain jurisdiction, but that it would stay all proceedings pending the commencement by the plaintiff of a declaratory judgment action in the Supreme Court of the State of New York, to consider the constitutionality of the section in question. The district court "So Ordered" the stipulation on September 18, 1970.

On September 13, 1970, the plaintiff brought such an action in the Supreme Court, County of Nassau, State of New York. On November 30, 1970 Justice Theodore Velsor, in an unreported opinion, held the statute constitutional, rely-

---

* Frederick vP. Bryan, of the Southern District of New York, sitting by designation.

1. Section 426(3) provides:
   Any person who, being a police commissioner or an officer or member of any police force in this state:

3. Contributes any money, directly or indirectly, to, or solicits, collects or receives any money for, any political fund, or joins or becomes a member of any political club, association, society or committee,
   Is guilty of a misdemeanor.

ing upon the previous opinion of the Appellate Division in Lecci v. Looney, 33 A.D.2d 916, 307 N.Y.S.2d 594 (2d Dep't), leave to appeal denied, 26 N.Y.2d 612, 310 N.Y.S.2d 1025, 258 N.E.2d 729 (1970).[2] The decision of the Supreme Court was affirmed by the Appellate Division without opinion on September 27, 1971, 37 A.D.2d 779, 325 N.Y.S.2d 400 (2d Dep't), and leave to appeal to the Court of Appeals was denied without opinion, 29 N.Y.2d 486, 326 N.Y.S.2d 1025, 276 N.E.2d 628 (1971). A petition for a writ of certiorari was denied by the United States Supreme Court on April 17, 1972, 405 U.S. 1073, 92 S.Ct. 1497, 31 L.Ed.2d 807. Plaintiff thereupon returned to the federal district court, and in a memorandum opinion and order entered on June 15, 1973, Hon. Joseph C. Zavatt, Senior United States District Judge, declared Section 426(3) of the New York State Election Law unconstitutionally vague and overbroad, in violation of the First Amendment. 360 F. Supp. 759 (E.D.N.Y.). This appeal followed. Judgment vacated and complaint dismissed.

We do not reach the merits of this appeal since it is abundantly clear that the court below had no jurisdiction to issue the declaratory judgment. It is basic that no federal court "has 'jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies.' " Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969) (emphasis omitted). Lecci, the named plaintiff here, resigned or retired from the Nassau County Police Department at some point during the state litigation and was not a policeman subject to the statute at the time of the adjudication below. The action was therefore mooted. Kerrigan v. Boucher, 450 F.2d 487 (2d Cir. 1971). Although Lecci purported to sue as a representative of the Nassau County Patrolmen's Benevolent Association, there is no allegation of any harm to the Association, which is not subject to prosecution under the statute, and it could not assert the rights of its members, Aguayo v. Richardson, 473 F.2d 1090, 1099–1100 (2d Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974). There was never any finding made or apparently even sought that the action proceed as a class action under either Fed.R.Civ.P. 23 or 23.2. Even if a class action had been declared, the loss of standing of the only champion would moot the litigation. Geraci v. Treuchtlinger, 487 F.2d 590 (2d Cir. 1973 (per curiam).

Even if the plaintiff had standing here, there is serious doubt that the complaint alleges an actual case or controversy. Although the plaintiff was a policeman, there is no indication in his complaint that he was proposing to undertake any political activity which might be within the statute.[3] There-

---

2. In *Looney*, the Appellate Division sustained the constitutionality of Rule 14, Art. 6 of the Rules and Regulations of the Nassau County Police Department which provided, *inter alia*, that "no member of the Force or Department shall be permitted to be a delegate or representative to, or take active part in any movement for the nomination or election of candidates for political or public office."

3. In this regard the complaint alleges:
   4. That Section 426 Subdivision 3 of the Election Law of the State of New York denies to members of the Police Department the right to participate in everyday political affairs a right guaranteed to every citizen by our founding Fathers in the Constitution of the United States.

   5. That to deny this basic inalienable right to police officers, makes them second class citizens and discriminates against them in violation of the federal and state constitutions and also the Federal Civil Rights Act.

   6. That any member of the police department who fails to obey the provisions of Section 426, Subdivision 3, of the Election Law of the State of New York would be found guilty of a misdemeanor and because of this would be dismissed from the department.

   7. By reason of the foregoing Plaintiff and all other members of the police department are in danger of suffering great harm and irreparable damage and injury for he and they have no adequate remedy in law.

fore, there was no allegation of any threatened criminal prosecution. The complaint rests solely upon the theory that the statute has a chilling effect upon First Amendment rights. In United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947), the Supreme Court, upholding the constitutionality of the Hatch Act's ban on federal employee participation in partisan political activities, indicated that allegations of subjective chill were not an adequate substitute for a claim of present objective harm or a threat of specific future harm. That holding was reiterated in Laird v. Tatum, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). See also Fifth Ave. Peace Parade Comm. v. Gray, 480 F.2d 326 (2d Cir. 1973). The court below considered that Mitchell had been overruled and was not binding. In view of the recent Supreme Court holdings in United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, AFL–CIO, 413, U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) and Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), it is quite obvious that the rumors of Mitchell's demise have been somewhat exaggerated. The "chilling effect" standing position of Dombrowski v. Pfister, 380 U.S. 479, 491–492, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965) does not survive where the statute challenged for overbreadth regulates conduct rather than speech which is clearly the thrust of the statute here attacked. See Broadrick v. Oklahoma, *supra.* We have been reminded by Mr. Justice White in *Broadrick* that "under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." 413 U.S. at 610–611, 93 S.Ct. at 2915. The district court here, in our view, was rendering a purely advisory opinion which of course it is powerless to do.

■ ■■ Aside from the lack of a justiciable controversy, the court below lacked jurisdiction to review the state court's determination of the federal constitutional questions; only the Supreme Court is authorized to review on direct appeal the decisions of state courts. Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). Here, the plaintiff initially sought the constitutional determination in the federal court, which he had a perfect right to do. However, by entering into the court approved stipulation of September 9, 1970, and by litigating his constitutional claims in the state courts without reserving them for federal determination, he elected to waive that right. In England v. Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the plaintiff challenged the constitutionality of a state statute in a federal district court. That court abstained since there were questions of construction of the state statute which it felt should be tried in the state courts. The federal court nonetheless retained jurisdiction to determine any federal question. The Louisiana state courts not only construed the statute but determined that it was constitutional. The Supreme Court held that a future plaintiff, by proceeding in state court as England had, would elect to forgo his right to return to the district court. 375 U.S. at 419, 84 S.Ct. 461.

■■ *England* is controlling here. The plaintiff stipulated, not that the statute be given a construction in the state court, but that its constitutionality be determined in an action in the Supreme Court of New York. That determination was appealed to the highest court of New York and then review was sought in the United States Supreme Court. The record does not even indicate that the New York courts were made aware of the fact that a federal district court was retaining jurisdiction. Appellee seeks to avoid the effect of *England* by suggesting that the stipulation was was not "voluntary." [4] Since

4. Plaintiff in his brief on appeal at 36 (without any citation to the record) suggests that

the stipulation was entered into because, during a pre-trial conference, Judge Zavatt

the plaintiff was represented by counsel and there is no question that the stipulation was executed, we have no reason at all to question its binding effect. In its opinion below, the court indicated that the state courts dealt "rather summarily" with the substantive constitutional issues raised, and the appellee even suggests that the recitation of only state cases in the New York Supreme Court opinion indicates that the state courts did not consider the federal constitutional question. Since the complaint in the state court is substantially identical[5] to that brought in the federal action, and since the New York Supreme Court opinion recites that the action seeks a declaration of unconstitutionality, it is frivolous to suggest that the constitutional issue was not before the state courts. The fact that the affirmances in the state courts were without opinion or without specific reference to the constitutional question is of course immaterial. Grubb v. Public Util. Comm'n, 281 U.S. 470, 477–478, 50 S.Ct. 374, 74 L.Ed. 972 (1930); Tang v. Appellate Division, 487 F.2d 138 (2d Cir. 1973). The policy underlying the *England* decision is the avoidance of "a potential source of friction between the state and federal judiciaries." 375 U.S. at 419, 84 S.Ct. at

466. The procedure employed here does nothing by exacerbate that relationship.[6]

Judgment vacated and complaint dismissed.

"noted that the statute in question had not been exposed to the State Courts for the passing upon of its *State* constitutionality, and therefore, directed the Plaintiff-Appellee to seek such a State Court determination . . . ." (Emphasis added). Assuming this is true, it would not render the stipulation involuntary. There is nothing to suggest that the district judge believed that the plaintiff was required, in the first instance, to litigate his federal claims in state court and, even if he had entered such an order, plaintiff would have had a remedy by way of appeal. See American Trial Lawyers Ass'n v. New Jersey Supreme Court, 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973) (per curiam). Here, the plaintiff entered into a stipulation broader in scope than that allegedly directed by the district court and commenced an action in the state court in accordance with that agreement on September 13, 1970, five days prior to the district court's approval. Under these circum-

stances, we find the fact that the court "So Ordered" the stipulation on September 18, 1970 of little significance.

5. The complaints in the federal and state actions were identical except that the complaint filed in state court included the following additional allegation:

That plaintiff and other members of the Police Department similarly situated wish to become members of political groups and take an active part in the nomination and election of public officials by personally contributing to their campaigns and by soliciting others to do the same.

6. Aside from the jurisdictional deficiencies noted, we are at a loss to understand how a single district court judge who has been asked to declare a state statute unconstitutional and also to enjoin its enforcement, is empowered to act. A three-judge court is mandated by 28 U.S.C. § 2281. See Nieves v. Oswald, 477 F.2d 1109 (2d Cir. 1973).