Juan Sanchez LUGO, Plaintiff-Appellant,

v.

The EMPLOYEES RETIREMENT FUND OF the ILLUMINATION PRODUCTS INDUSTRY et al., Defendants-Appellees.

No. 150, Docket 75–7128.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1975.

Decided Jan. 14, 1976.

David S. Preminger, New York City (Legal Services for the Elderly Poor; John C. Gray, Brooklyn Legal Services, Corporation B, Brooklyn, N.Y., on the brief), for appellant.

Norman Rothfeld, New York City (Menagh, Trainor & Rothfeld, New York City, on the brief), for appellees.

Before FEINBERG, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Juan Sanchez Lugo appeals from a judgment of the United States District Court for the Eastern District of New York, John R. Bartels, *J.*, dismissing his complaint against The Employees Retirement Fund of the Illumination Products Industry and the individual trustees of the Fund. After a bench trial, the judge held that Lugo had failed to establish that the Fund, when it denied his claim for a pension, was in violation of section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5).[1] We affirm the judgment of the district court.

## I

### Background

In April 1972, appellant had been continuously employed in the industry and a member of the International Brotherhood of Electrical Workers Union, Local No. 3, for over 16 years, and was a par-

---

1. 29 U.S.C. § 186 provides:

(a) It shall be unlawful for any employer . . . to pay . . . any money or other thing of value—

(1) to any representative of any of his employees . . .

\* \* \* \* \* \*

(c) The provisions of this section shall not be applicable . . .

(5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents . . .

Provided, That (A) such payments are held in trust for the purpose of paying . . . for the benefit of employees, . . . for

medical or hospital care, pensions on retirement or death . . ., compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund . . .; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities . . .

ticipant in the defendant Fund. Appellant, who was 49 at the time, felt he was physically unable to continue working at his job in the industry and applied for a disability pension. Lugo's application stated that he was "diabetic" and identified his physician as Dr. Simpson. With the application appellant apparently submitted a letter from the doctor, dated December 23, 1971, which stated:

To whom it may concern:

Mr. Sanchez [Lugo] is a patient at this office. He was found to have moderate elevation in his blood sugar.

An additional letter from the doctor, dated May 22, 1972, in support of the application, stated:

To whom it may concern:

The above named patient is being treated at this office for Diabetes Mellitus.

He is on oral hypoglycerine medications.

His condition is fair.

In May 1972, appellant was examined by physicians retained by the Fund and given various tests. Dr. W. T. Kriete, Medical Director of the Fund's Pension Committee, then reported that appellant "was found to have diabetes as well as a visual disturbance which is correctable by glasses. I do not consider this man disabled." At a meeting of the Fund's Pension Committee in September 1972, at which the results of the tests and the other written material were considered, appellant's application for a disability pension was denied on the ground that he was not in fact disabled.[2] Lugo was not given an opportunity to appear in person before the Committee.

Appellant claims that at about the same time, he also applied for standard pension benefits, which, under the labor agreement governing the Fund, would not ordinarily be available until age 60. Defendants say that no such formal application was ever made.

In May 1973, appellant filed his complaint in the district court, claiming that defendants' refusal to award him disability or retirement benefits was unlawful. As to the former, the basis of the claim was the absence of proper procedures. As to the standard retirement benefits, plaintiff argued that the minimum work requirement of 90 months of employment in the 10 years before the application (the 90/10 rule) was arbitrary and unreasonable. The relief sought was a declaratory judgment, an order either requiring defendants to grant the application for disability or standard retirement benefits or requiring them to accord him full hearing procedures, and $25,000 damages. In October 1973, Judge Bartels denied defendants' motion to dismiss the complaint, holding that the district court had jurisdiction under section 302(e) of the Taft-Hartley Act, 29 U.S.C. § 186(e),[3] because plaintiff claimed that the Fund was not one "for the sole and exclusive benefit of the employees." The judge also held that the complaint stated a claim upon which relief could be granted. 366 F.Supp. 99 (E.D.N.Y.).

After a non-jury trial in October 1974, the judge found for defendants. Regarding the claim for disability benefits, the judge held that "The absence of a provision for a hearing" was not a structural defect because

employees are protected from possible disloyalty of the officials administer-

---

**2.** Lugo had also applied in April 1972 for social security disability benefits. The application was denied after Lugo had been examined by two physicians and this decision was upheld by an Administrative Law Judge after a hearing. In December 1973, the Appeals Council of the Department of Health, Education, and Welfare approved the decision of the Administrative Law Judge.

**3.** 29 U.S.C. § 186(e) provides:

The district courts of the United States . . . shall have jurisdiction . . . to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of section 101–115 of this title.

The statutes referred to are provisions of the Clayton Act and Norris-LaGuardia Act restricting injunctive relief in labor disputes.

ing the Fund by the "good faith" requirement of . . '. the Agreement, which requires . . . a *bona fide* determination of disability.[4]

As to the denial of standard retirement benefits, the judge viewed plaintiff's case as

> essentially a challenge to the failure of the pension plan to provide for vesting of rights prior to the age of 60. Plaintiff having retired at the age of 50, will not be eligible for a pension when he reaches the age of 60 since he will not have met the 90/10 requirement. The essence of his complaint on this score is that he is denied benefits which others with equal periods of service who have reached the age of 60 will receive. It is not necessary that a plan confer equal benefits upon all employees regardless of their differences in age and periods of service. Nor is it necessary for all pension plans to contain vesting provisions.

Finding that the eligibility requirements were "designed in good faith to provide for the actuarial soundness of the Fund" the judge held that plaintiff's claims were without merit.

On appeal, plaintiff argues essentially as he did in the district court. In addition, plaintiff claims that Judge Bartels erred in excluding evidence plaintiff offered at trial to show that the 90/10 rule was not necessary to preserve the fiscal integrity of the Fund. Defendants renew their contention that the federal courts lack jurisdiction over this suit. They also deny that plaintiff was deprived of any rights by the Fund's procedures and contend that he lacks standing to sue for standard pension benefits. We turn now to the arguments of the parties.

## II

### Jurisdiction

Plaintiff argues that federal jurisdiction exists under section 302(e) of the Taft-Hartley Act, see note 3 supra, because that section authorizes suits for violations of section 302, and this is such a suit. His theory is that section 302(c)(5), see note 1 supra, requires the Fund to be "established . . . for the sole and exclusive benefit of the employees," and that the challenged provisions of the Fund are so arbitrary and unreasonable that no plan containing them can be considered to fit that description.

Section 302(e) has been the focus of considerable litigation, and several controversies about its meaning have developed. One question which receives considerable attention in the briefs in this case is whether section 302(e) confers jurisdiction "over all cases pertaining to § 302 pension plans," as plaintiff contends,[5] or whether there is

> a distinction between actions involving "structural" deficiencies in the relevant trust which cause it to violate the "sole and exclusive benefit" provision of § 302(c)(5) and actions involving only questions of day-to-day fiduciary administration of welfare and pension funds.

*Alvares v. Erickson*, 514 F.2d 156, 165 (9th Cir. 1975), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). See also *deLoraine v. MEBA Pension Trust*, 499 F.2d 49, 51 n. 9 (2d Cir. 1974). Support for the broad view of section 302(e) can be found in a number of cases.[6] Other courts, however, notably

---

**4.** The reference was to ¶ 5 of the agreement, which provides:

> The determination in good faith by the Committee of any matter or question under this agreement shall be final and conclusive.

**5.** Appellant's reply brief, at 5.

**6.** *Copra v. Suro*, 236 F.2d 107, 114–16 (1st Cir. 1956). See also cases discussed in *Bowers v. Ulpiano Casal, Inc.*, 393 F.2d 421, 424 n.3 (1st Cir. 1968).

the First Circuit in *Bowers v. Ulpiano Casal, Inc.*, 393 F.2d 421 (1st Cir. 1968), have concluded that section 302(e) only gives jurisdiction to restrain violations of the basic structure provided by Congress for section 302 pension funds,[7] "not violations of fiduciary obligations or standards of prudence in the administration of the trust fund." *Id.* at 424.[8]

By our decision in *Cuff v. Gleason*, 515 F.2d 127 (2d Cir. 1975), we joined the courts that have taken a narrow view of the scope of section 302(e). In that case, we regarded the question as "whether the application of rules of a jointly-administered pension trust to an individual claim was arbitrary and capricious." *Id.* at 128. We held that federal jurisdiction is lacking "where an application of a trust pension plan . . . was involved and the specific requirements of § 302(c)(5) are met." *Id.* See also *Beam v. International Organization of Masters, Mates and Pilots*, 511 F.2d 975, 978–79 (2d Cir. 1975). This does not dispose of our case, however, since Lugo is challenging not the application of the provisions of the trust in his particular case, but the provisions themselves, which he claims violate section 302(c)(5). In this case, unlike *Cuff*, the very issue raised is whether the requirements of section 302(c)(5) are met.

Defendants however, argue in effect that claims such as those made in this case are not claims of "structural deficiencies" in the pension plan. According to defendants, the "sole and exclusive benefit" language means only that the trust funds must not grant benefits to anyone *other than* employees.[9] Plaintiff argues, on the other hand, that the quoted language, coupled with the jurisdictional grant in section 302(e), confers on the federal courts the power to create a

federal common law governing the management of pension plans. *Cf. Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). We have considerable doubt about this proposition. The length and detail of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., indicate that the regulation of pension funds with regard to such matters as vesting and procedural rights is a complex task more appropriate for Congress than for the courts. The careful attention paid by Congress in that recently enacted statute to the problem of effective dates and coverage [10] makes us hesitate to conclude that the courts have long been authorized, via the fifth exception to a criminal statute, see note 1, supra, to create obligations similar to those of ERISA.

However this dispute is to be resolved, it seems to us that the controversy is not about the jurisdictional provisions of section 302(e), but about the proper interpretation of the substantive requirements of section 302(c)(5). As the Supreme Court made clear in *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946):

> Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.

In this case, Judge Bartels correctly analyzed the true scope of the jurisdictional inquiry when he said with reference to plaintiff's claim for standard retirement benefits:

> Plaintiff having alleged that the trust fund is not "for the sole and exclusive benefit of the employees" by reason of the exclusive eligibility requirements,

---

7. For examples of "structural violations" other than those involving the "sole and exclusive benefit" provision, see *Bowers v. Ulpiano Casal, Inc.*, supra note 6, 393 F.2d at 424 n.4.

8. See, e. g., *Employing Plasterer's Ass'n of Chicago v. Journeymen Plasterers' Protective & Benevolent Soc'y of Chicago, Local No. 5*, 279 F.2d 92, 97 (7th Cir. 1960). See also cases

collected in *Alvares v. Erickson*, 514 F.2d 156, 164–65 (9th Cir. 1975), cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975).

9. Appellees' brief, at 6–7.

10. See 29 U.S.C. §§ 1003, 1031, 1051, 1055(i), 1061, 1081, 1086, 1101, 1114, 1144(a), 1381.

the Court has jurisdiction to determine whether the trust agreement in fact satisfies the statutory standards of Section 302 . . ..

366 F.Supp. at 102. The same analysis applies to the claim for a disability pension. Plaintiff argues that a trust fund authorizing the trustees to act arbitrarily and capriciously in determining claims without extending certain procedural protections fails to satisfy the "sole and exclusive benefit" requirement of section 302(c)(5). It is not necessary for us, at this stage, to agree with plaintiff's interpretation of that requirement in order to have jurisdiction to decide the case; so long as plaintiff's claim that the section has been violated is not "wholly insubstantial and frivolous," *Bell v. Hood, supra*, 327 U.S. at 682–83, 66 S.Ct. 773, jurisdiction exists.

## III

## The Merits

As we have already indicated, plaintiff's theory of the scope of section 302(c)(5) raises difficult questions. It is not necessary for us to decide whether that interpretation is correct, however, because plaintiff's claims to both disability benefits and standard retirement benefits must be dismissed even if his liberal interpretation of section 302(c)(5) is correct.

### Disability benefits

Lugo argues that before his claim to disability benefits could be denied, he was entitled to such procedural safeguards as notice of the meeting at which the decision was to be made, a hearing at which he would be confronted with the evidence against his claim and entitled to present evidence of his own and cross-examine witnesses against him, and a decision by the trustees containing articulated findings and conclusions. *Cf. Sturgill v. Lewis*, 125 U.S.App.D.C. 335, 372 F.2d 400, 401 (D.C. Cir. 1966). The

failure of the pension plan to provide such protections is the defect that allegedly violates section 302(c)(5).

■ We do not believe that the decision made by the Fund was wanting in procedural fairness. In support of his disability application, Lugo only submitted two letters from his doctor, which did not contend that he was disabled. They stated merely that plaintiff had a "moderate elevation in his blood sugar," that he was being treated for diabetes with an identified medication, and that his condition was "fair." Plaintiff submitted no further information in support of his application, although he obviously knew that he could.[11] Lugo was extensively examined by the Fund's doctors, who concluded that he was not disabled. The record before Judge Bartels included a letter from Dr. Kriete, describing the results of various tests performed in May 1972 by the Fund's doctors in examining plaintiff, and explaining the basis of his prior recommendation against a finding of disability. Before Judge. Bartels, plaintiff offered no further medical proof nor did he indicate what evidence he might offer at a further hearing by the Fund. Finally, at no time had plaintiff requested a personal appearance before the trustees considering his disability claim.

Under these circumstances, we simply do not think it is necessary to examine the merits of plaintiff's argument that the Fund's procedures were so wanting in elements of fair play as to amount to a·structural defect. We do not see how the Fund could be found at fault for dismissing plaintiff's application without the full procedures plaintiff now seeks. There has been no showing that more formal and elaborate procedures might have brought about a different result. At least when an applicant's claim of disability is this weak, reliance on written. medical reports could not be a violation of section 302(c)(5). Cf. *Richardson*

---

11. The second letter from plaintiff's doctor is dated six weeks after his formal application

and therefore must have been submitted at a later date.

*v. Perales,* 402 U.S. 389, 402–06, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

*Retirement benefits*

We turn now to plaintiff's claim regarding standard retirement benefits. At the trial below, Judge Bartels initially indicated that he found this claim unripe, and for that reason excluded certain evidence offered by plaintiff relating to it. In his final decision, however, the judge disposed of the claim on the merits, ruling that the regulation challenged by plaintiff was reasonable and not a violation of the Taft-Hartley Act. We believe the judge's initial reaction was correct and that the dispute between Lugo and the Fund is not ripe for adjudication.

Plaintiff attacks the provision of the plan that requires an applicant for standard retirement benefits to have worked 90 months in the industry within the 10 years immediately preceding his application in order to be eligible. According to plaintiff, this rule is arbitrary and unreasonable because it excludes some employees from benefits while extending benefits to others who have worked an equal or lesser time in the industry, cf. *Roark v. Lewis,* 130 U.S.App.D.C. 360, 401 F.2d 425 (D.C. Cir. 1968), and because in Lugo's case it takes away benefits already earned because of an occurrence beyond the control of the worker, namely, disability. Cf. *Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir. 1971).[12]

There is, however, another rule of eligibility which excludes Lugo. Before an employee can apply for a standard retirement pension, he must have reached age 60. The plaintiff specifically stated at trial, on more than one occasion, that he does not challenge the validity of this rule. Lugo was about 49 when he allegedly applied for pension

benefits,[13] and is only 53 now. He is thus not entitled to receive a retirement pension for a reason entirely independent of the 90/10 rule he seeks to challenge.

We believe that this case, in which plaintiff argues that a regulation that might affect him at some future time is invalid because it conflicts with a federal statute, may usefully be analogized to a challenge to an administrative regulation on the ground that it conflicts with statutory or constitutional provisions. After a lengthy discussion of the Supreme Court's decisions regarding the ripeness for adjudication of such challenges, Professor Davis concludes that "An issue is normally ripe for judicial determination when interests of the plaintiff are in fact subjected to or imminently threatened with substantial injury." 3 Davis, Administrative Law Treatise § 21.10, at 200 (1958), and at 700 (Supp.1970). See *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). This test essentially restates in more concrete terms the standard for declaratory judgments announced by the Supreme Court in *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), and restated as recently as *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972):

> Basically, the question in each case is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

We do not believe that Lugo can meet this test. The possibility, or even, if such it is, the certainty that the Fund

---

12. We note in passing that this aspect of the claim must fall in any event, since on this record there is no persuasive reason to believe that Lugo was disabled.

13. There is no evidence in the record that Lugo ever made formal application for a standard retirement pension, and the attorneys for the parties disagree as to whether there was a stipulation that he was to be deemed to have so applied.

will invoke the 90/10 rule that Lugo claims is illegal to deny his application for a retirement pension at age 60 causes him no injury now, nor is he imminently threatened with such injury. The interest he asks us to defend has little "immediacy and reality."

Of course, there are situations in which a case may be ripe for declaratory relief before the challenged regulation is actually applied. As Professor Davis puts it, "Resolving a debilitating legal uncertainty is a legitimate judicial function . . . whenever the continued uncertainty causes substantial harm. . . ." *Davis, supra*, at 203. An example is our recent decision in *Begins v. Philbrook*, 513 F.2d 19 (2d Cir. 1975), where we held justiciable a challenge to a state welfare regulation making ineligible any family owning two cars, even though at the time of the suit the plaintiffs owned only one car, because the plaintiffs alleged a need for two cars.[14] In that case, where plaintiffs · were "threatened with loss of benefits if they again purchased a second car," we noted that

> plaintiffs are now subject to the very prohibition which they seek to challenge, and their allegations suggest not some subjective fear, but rather assert both "present objective harm" and the "threat of specific future harm." *Lecci v. Cahn*, 493 F.2d 826, 829 (2d Cir. 1974).

513 F.2d at 23. In this case, Lugo does not allege that uncertainty as to whether he will be eligible for a pension at age 60 has any effect on his present behavior or condition. Cf. also *Abbott Laboratories v. Gardner, supra*, 387 U.S. at 152–54, 87 S.Ct. 1507.

It is possible that plaintiff's complaint could be read as a challenge not to the 90/10 rule in isolation, but to the interaction of that rule with the rule making 60 the minimum age for application.[15] Indeed, part of the relief demanded by plaintiff in his complaint was an injunction ordering the Fund to "grant the plaintiff's application for . . . retirement benefits." If the complaint is so interpreted, plaintiff could argue that he has a present and not a future claim. However, plaintiff specifically disclaimed at trial any attack on the 60-year rule, and both the complaint and the record show that insofar as plaintiff does attack the combination of the two rules, rather than the 90/10 rule alone, he argues only that their interaction prevents early vesting of pension rights, which would be payable at some later date, not that they prevent him from getting his pension payments now.[16] Thus, no matter how we reasonably view the plaintiff's claim to a standard retirement pension, it is at best a claim that when, seven years from now, plaintiff is old enough to be entitled to apply for such benefits, the trustees will deny his application on the basis of the 90/10 rule, which he claims is illegal. Such a claim is not ripe for adjudication.

A number of other considerations lend support to this view. There is no factual dispute that needs to be resolved immediately because memories of the relevant transaction might dim or because witnesses might become unavailable or die; the dispute concerns only the legality of one of the Fund's regulations. Moreover, this case is not like an ordinary contract claim, where a plaintiff may argue that defendant's indication that it will not pay benefits is an anticipatory

---

14. Plaintiffs' child had "serious coronary and respiratory problems and often need[ed] immediate medical attention," necessitating an available car at home, while one of the plaintiffs, a construction worker in northern Vermont, needed a car to look for and commute to work over a large area.

15. Indeed, when Lugo ceased work in 1972, he had apparently worked for 90 months in the last 10 years, and thus if the age requirement for a standard pension had been 50 instead of 60, he would have satisfied all the requirements for eligibility.

16. This is how Judge Bartels interpreted this aspect of plaintiff's case.

breach, giving rise to an immediate cause of action.[17] In addition, Lugo's claim to retirement benefits seems to have been something of an afterthought. While the record of his attempts to get disability benefits is quite complete, the record with respect to this claim is quite bare. Indeed, as indicated in note 13 supra, there is even some dispute as to whether he ever applied for a retirement pension. Also, as indicated above, the impact of ERISA prior to the time Lugo reaches age 60 will undoubtedly be considerable.[18] To embark on a lengthy analysis of the meaning, in this context, of "sole and exclusive benefit" in section 302(c)(5) would seem unwise unless necessary to protect plaintiff against immediate harm.

Accordingly, we find that the district court did have jurisdiction to determine whether the challenged aspects of the pension plan violated section 302(c)(5); that at least as applied to plaintiff, the claimed lack of procedural due process in determining applications for disability benefits does not violate that section; and that plaintiff's attack on the 90/10 rule, which may prevent him from receiving a standard retirement pension at some point in the future, is not ripe for adjudication. We therefore affirm the judgment of the district court dismissing plaintiff's complaint.

---

17. These two considerations serve to distinguish *Bird v. Computer Technology, Inc.*, 364 F.Supp. 1336 (S.D.N.Y.1973), in which two executives, who had been induced to leave one corporation for another's employ by the promise of lucrative retirement benefits, were awarded a declaratory judgment that they had a right to those benefits many years before payment would actually become due. In that case, however, the parties disputed their obligations under a contract, and parol evidence was received concerning the intention of the parties. There was thus an important reason for resolving the dispute immediately, while memories of the relevant transactions were relatively fresh, rather than some time in the future, when memories might be blurred, witnesses deceased and documents lost. Moreover, the plaintiff in *Bird* claimed anticipatory breach of contract.

18. Indeed, defendants claim that under ERISA plaintiff's situation may change, although this is disputed by plaintiff.