Adrian FASE, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

SEAFARERS WELFARE AND PENSION PLAN, Joseph DiGiorgio, Individually and in his capacity as the Secretary-Treasurer of the Seafarers Welfare and Pension Plan, Price C. Spivey, Individually and in his capacity as the Administrator of the Seafarers Welfare and Pension Plan, and Fred Farnen, Lindsey Williams, Joseph DiGiorgio, Frank Drozak, E. Aubusson, Capt. Joseph Cecire, James Hayes, C. J. Bracco, William Crippen, Irving M. Saunders, in their capacity as Trustees of the Seafarers Pension Plan, Defendants.

No. 75 Civ. 1342.

United States District Court, E. D. New York.

June 14, 1977.

David S. Preminger, Legal Services for Elderly Poor, New York City, for plaintiffs.

Carolyn Gentile, Brooklyn, N. Y., for defendants.

## OPINION AND ORDER

PLATT, District Judge.

The plaintiff, Adrian Fase, is suing the defendants, Seafarers Welfare and Pension Plan ("the Plan") and various officers and trustees of the Plan, for withholding pension benefits from the plaintiff. The defendants counterclaim against the plaintiff for return of benefits already paid.

The defendants move pursuant to Rule 12 of the Federal Rules of Civil Procedure to dismiss plaintiff's action, or, alternatively, pursuant to Rule 56 for summary judgment. The plaintiff cross-moves for summary judgment on his claim and on the defendants' counterclaim.

## FACTS

Fase is a former merchant mariner and a participant in the Plan because of his membership in the Seafarers International Union of North America.

On November 22, 1971 Mr. Fase applied for disability benefits under the Plan because he had been declared permanently unfit for sea duty as a result of arthritic pain. He was advised that under Article I, Section 4(a) of the Plan, an employee who was eligible for disability benefits under Social Security would only be eligible for benefits under the Plan when his disability had been determined by the Social Security Administration. Article I, Section 4(a), reads in relevant part as follows:

"The Trustees, on the basis of medical evidence, shall be the sole and final judge

of total and permanent disability and entitlement to a Disability Pension provided, however, that if an employee is covered by the Social Security Act or the Railroad Retirement Act and is eligible for a disability pension benefit under either of these Acts, he must apply for the disability pension benefit provided by said Act, and the Trustees shall be bound by the determination of the Social Security Administration or the Railroad Retirement Board as to such employee's total and permanent disability."

Pursuant to that provision the plaintiff applied for Social Security disability benefits in November, 1971. That application was originally denied by the Social Security Administration, but after an exhaustion of appeals within the Administration and after review and remand by a district court, the plaintiff was finally declared eligible for disability benefits on August 8, 1974. On that date the Social Security Administration declared that the plaintiff had been disabled on July 12, 1971 and thus awarded him retroactive social security payments from that date and prospective payments for the future.

In January of 1975 the plaintiff submitted to the Trustees of the Plan a copy social security benefits check, and accordingly the Trustee approved his application for benefits under the Plan on January 22, 1975. However, pursuant to Article III, Section I(B) of the Plan, which is quoted below, the Trustees started payments of benefits on February 1, 1975.

"(B) Payment of Disability Pension Benefits shall commence on the first day of the calendar month next following the later of the following dates:

(a) The date of receipt by the applicant of his final Sickness and Accident Benefit payment from the Seafarers' Welfare Plan, and

(b) The date on which the application for a Disability Pension Benefit is approved by the Trustees."

Finally, the plaintiff did receive Sickness and Accident Benefits under the Plan during the period from November 1971 through July 1972.

On these facts the plaintiff originally sued for disability benefits from the time he applied for them on November 22, 1971 until the defendants started paying him on February 1, 1975. However, the plaintiff concedes on pages 43–44 of its Memorandum that "while plaintiff claims to have been eligible for benefits as of November 22, 1971, he does not dispute that the defendants may postpone commencement of payment until August 1, 1972, the first day of the calendar month following the month in which plaintiff's Sickness and Accident benefits terminated."

Therefore, the issue here is the denial of benefits to the plaintiff from August 1, 1972 to February 1, 1975.

Further, the defendants have cross-claimed for fraud because the plaintiff has been allegedly working since February of 1975 in violation of the Plan's regulations. The question on the plaintiff's cross motion for summary judgment on this claim is whether the defendants have raised an issue of fact.

I

The plaintiff alleges jurisdiction under § 302(e) of the Taft-Hartley Act, 29 U.S.C. § 186(e) and under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The defendants dispute jurisdiction under both Acts, but as we find jurisdiction under the Taft-Hartley Act, we do not reach the more difficult question of jurisdiction under ERISA.

Section 302(e) of the Taft-Hartley Act authorizes suits in federal courts for violation of the other provisions of § 302. The plaintiff alleges that § 302(c)(5) has been violated here because that provision requires that trust funds be "established . . . for the sole and exclusive benefit of the employees," and that the challenged sections of the Plan are so arbitrary and unreasonable that they do not meet that test.

In *Cuff v. Gleason*, 515 F.2d 127, 128 (2d Cir. 1975), the Second Circuit held § 302(e) did not include a claim that "the application of the rules of a jointly-administered pension trust to an individual claim was arbitrary and capricious." However, in *Lugo v. Employees Retirement Fund of the Illumination Products Industry*, 529 F.2d 251, 255 (2d Cir. 1976), the Court of Appeals said that *Cuff* did not cover a case where the plaintiff was not challenging the application of the provisions of the trust in his case, but was rather challenging the provisions themselves.

Our case is clearly covered by *Lugo* as the parties agree the challenged provisions of the Plan were correctly applied to the plaintiff. The challenge here is to the reasonableness of the provisions themselves.

In such a case the Court held in *Lugo* that jurisdiction is met by allegations that "the trust fund is not 'for the sole and exclusive benefit of the employees' by reason of exclusive eligibility requirements." *Lugo, supra*, at 255, *quoting the Court below*, 366 F.Supp. 99, 102 (E.D.N.Y.1973). Further the Court went on to say that "so long as plaintiff's claim that the section has been violated is not 'wholly insubstantial and frivolous', *Bell v. Hood, supra*, 327 U.S. [678], at 682–83, 66 S.Ct. 773 [90 L.Ed. 930], jurisdiction exists." *Lugo, supra*, 529 F.2d at 256.

As the plaintiff's claim attacks exclusive eligibility requirements of the Plan, and as, for reasons stated below, it is clearly not frivolous, we find that jurisdiction exists under § 302(e).[1]

## II

■ Having found jurisdiction, we come to the more difficult problem of the merits of the plaintiff's claim. It is the plaintiff's argument that the Plan is wholly unreasonable and irrational because the only reason he did not receive pension benefits from August of 1972 to February 1975 was be-cause the Social Security Administration took over three years to determine he was disabled. In other words, the Trustees may have been justified in relying on the Social Security determination of disability in order to save the Plan the cost of making such a determination itself, but the Trustees were not justified in denying benefits for the three years it took to make that determination. The plaintiff says this is especially true because the Social Security determination was that the plaintiff had been disabled since 1971 and thus was eligible for retroactive social security payments. Under the Plan, the Trustees accepted the determination of disability, but, as they were required to under Article III, Section I(B), only authorized payments for the future, and thus ignored the fact that the Social Security Administration had determined that the plaintiff had been disabled since 1971.

It is perhaps easier to understand the plaintiff's position by way of an example. If two identical members of the Plan had both become disabled in 1971 and had both applied at the same time for benefits from the Plan and from Social Security, the plaintiff argues they should receive the same benefits. In most cases they would receive the same benefits as the parties agree that the Social Security Administration usually acts within a few months. However, if, as in this case, the wheels of the bureaucracy take three years to determine disability as to one of the two identical beneficiaries, then that beneficiary would lose three years of benefits under the Plan. Social Security corrects for this by allowing retroactive payment to the date of disability, but the Plan does not allow this.

The question then is on those undisputed facts, is either party entitled to summary judgment? Unfortunately, the Second Circuit in *Lugo* did not set standards for decisions in this type of case because on the merits it held that one claim was not ripe

---

1. The defendants also argue that the plaintiff's claim is for less than $10,000 and so there is no jurisdiction. However, there appears to be no jurisdictional amount required under 29 U.S.C. § 186(e), and besides the claim here exceeds $10,000 as Judge Judd stated in his opinion in this case of April 23, 1976.

and the other claim was meritless even if the most liberal interpretation of § 302(c)(5) was adopted. Therefore, we turn to the decisions of other courts to find the reach of § 302(c)(5).

In *Roark v. Lewis*, 130 U.S.App.D.C. 360, 401 F.2d 425 (1968), the plaintiffs were denied benefits because they had not worked for a contributing operator immediately prior to retirement. The Court analyzed the problem as follows (401 F.2d at 428):

"If the Fund's purpose is to pay benefits to contributing employers' employees (whose work generated the contributions), it is difficult to see how such a requirement promotes that purpose. It makes employees like these appellants sacrifice an otherwise valid pension claim because they worked a relatively short time for non-contributing operators. The contributions which signatory operators made on their behalf did not evaporate as a result of their later employment with nonsignatories.

On this showing, applicants made out a prima facie case as to the requirements unreasonableness. Once such a showing is made, we believe the burden must be cast upon the trustees to come forward with evidence establishing the reasonableness of their requirement, based on the purposes of the Fund."

*See also, Roark v. Boyle*, 141 U.S.App.D.C. 390, 439 F.2d 497 (1970).

Similarly, the plaintiff here has made a prima facie case as to the Plan's unreasonableness in that, as discussed above, the Plan seemingly discriminates between identical beneficiaries. The burden then is on the defendants to justify this discrimination.

The defendants offer two possible justifications. The first justification is that the payment of retroactive benefits would be a substantial financial burden on the Plan, and the second is that it would be a substantial administrative burden (Reply Brief pp. 13, 18). The administrative justification we find frivolous. The Plan may well be justified in relying on the Social Security determination of disability in order to avoid administrative burden, but this Court fails to see what added administrative burden would be incurred by accepting that determination as of 1971 rather than as of 1975.

The financial justification has more merit in that one of the most important concerns of the Plan must be to have enough money to pay claims. The question then is whether saving money, standing alone, is a sufficient justification for discriminating between similar beneficiaries.

Before discussing the cases we should note that financial considerations by themselves should not be sufficient justification for an exclusive eligibility requirement as *every* exclusive eligibility requirement would have the virtue of saving money.

The cases support this conclusion. In *Haynes v. Lewis*, 298 F.Supp. 331, 336 (D.D.C.1969), the Court held that it was justified to exclude workers who had left the bargaining unit prior to the establishment of the trust fund. In *Pete v. United Mine Workers of America Welfare and Retirement Fund of 1950*, 171 U.S.App.D.C. 1, 517 F.2d 1275 (1975) the Court held that requiring five years of eligible service out of the previous twenty was justified because it geared "eligibility for a full pension to a condition of substantial contributory employment." (517 F.2d at 1284). In both those cases the Court focused on the amount of time of eligible work and not on financial considerations.

On the other hand, in *Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1971), the plaintiff was denied benefits because of a "break in employment" rule. The Court held (453 F.2d at 1312) that "the rule, to the extent that it prohibits benefits to an employee solely because of an involuntary interruption in employment after the completion of his minimum employment requirement and before reaching retirement age, is unreasonable on its face."

Our case would seem to be similar to *Lee*. The plaintiff was denied benefits for reasons clearly beyond his control and that had no work related justification.

Furthermore, the closest case this Court has discovered is *Burroughs v. Board of Trustees of the Pension Trust Fund for Operating Engineers*, 398 F.Supp. 168 (N.D. Cal.1975), *aff'd*, 542 F.2d 1128 (9th Cir. 1976). In that case the Trust Fund also required the plaintiff to apply to Social Security for disability benefits. However, in *Burroughs* the Social Security Administration denied the plaintiff disability benefits solely on the ground that he had not met the Social Security earnings requirements. The Court held as follows (398 F.Supp. at 175):

"To the extent the definition of total disability within the Pension Plan requires a participant to receive a social security disability award, or its equivalent, said requirement is unreasonable on its face and as applied to plaintiff in that the earnings aspect of such an award was not intended to be a focus for determining eligibility for disability benefits under the Pension Plan."

These cases strongly support the conclusion that the Plan is unreasonable, and the cases the defendants cite do not alter this conclusion. The case most strongly relied on is *Johnson v. Botica*, 537 F.2d 930 (7th Cir. 1976). The plaintiff there was denied benefits because he had worked only 239 hours of the 500 needed to meet the minimum requirement for benefits. We do not think this case supports the defendants' position as the denial was based on the time the plaintiff had worked under the plan. Here the denial was unrelated to any work under the plan.

In summary, this Court has been cited no case where financial considerations standing alone justified a denial of benefits such as occurred here. In fact, the cases support the conclusion that the justification for denial of benefits must be in some way related to the purpose of such plans to pay benefits to employees of contributing employers. If any denial would be unrelated to that purpose, we think a denial based on delay in the Social Security Administration would be. If any denial would be arbitrary and capricious, this must be it.

Therefore, we hold that the Plan arbitrarily and capriciously denied the plaintiff benefits for the disputed period, and as such was a violation of the sole and exclusive benefit requirement of § 302(c)(5) of the Taft-Hartley Act. Furthermore, the defendants have been given an opportunity to provide adequate justifications for this denial and have failed to do so.

The plaintiff's motion for summary judgment as to pension benefits from August 1, 1972 to February 1, 1975 is granted.

## III

■ The final issue in this case is the plaintiff's motion for summary judgment on the defendants' counterclaim for fraud. The plaintiff has denied this claim, and apparently that denial is the only evidence before this Court on this motion. The defendants have listed no witnesses on this point in the pretrial order submitted to this Court because they claim they are not sure who they will call. However, as the Court said in *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972),

"[a] party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to 'smoke out' the facts so that the judge can decide if anything remains to be tried."

Alternatively, the defendants argue that "it was agreed by all parties that despite the submission of a pretrial order to comply with the rules of this Court neither party would be precluded from additional discovery should the summary judgment motion filed by the defendants be denied." Unfortunately, this hardly justifies not responding properly to a summary judgment motion, and so plaintiff's motion for summary judgment should be granted.

The plaintiff's motions for summary judgment on his claim and on the defendants' counterclaim should be, and the same hereby are, granted.

SO ORDERED.