Adrian FASE, Individually and on behalf of all others similarly situated, Plaintiff-Appellant,

v.

SEAFARERS WELFARE AND PENSION PLAN, Joseph DiGiorgio, Individually and in his capacity as the Secretary-Treasurer of the Seafarers Welfare and Pension Plan, Price C. Spivey, Individually and in his capacity as the Administrator of the Seafarers Welfare and Pension Plan, and Fred Farnen, Lindsey Williams, Joseph DiGiorgio, Frank Drozak, E. Aubusson, Capt. Joseph Cecire, James Hayes, C. J. Bracco, William Crippen, Irving M. Saunders, in their capacity as Trustees of the Seafarers Pension Plan, Defendants-Appellees.

No. 326, Docket 78–7368.

United States Court of Appeals, Second Circuit.

Argued Nov. 8, 1978.

Decided Dec. 22, 1978.

David S. Preminger, New York City (Legal Services for the Elderly Poor, New York City), for plaintiff-appellant.

Carolyn Gentile, Brooklyn, N.Y., for defendants-appellees.

Before FRIENDLY, MANSFIELD and MESKILL, Circuit Judges.

FRIENDLY, Circuit Judge:

This is an appeal from an order of the District Court for the Eastern District of New York denying a motion by plaintiff's attorney for the award of counsel fees for his successful prosecution of an action for disability pension benefits by plaintiff Fase against defendant Seafarers Welfare and Pension Plan (SWPP). Fase claimed that a provision of the Plan which required an applicant for a disability benefit who was covered by the Social Security Act or the Railroad Retirement Act to apply for the

disability benefits provided by such acts and await the determination of the Social Security Administration or the Railroad Retirement Board before becoming entitled to disability benefits under the Plan violated § 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), and unspecified provisions of ERISA, 29 U.S.C. §§ 1001 *et seq.* Fase did not contend that it was illegitimate for the Plan to defer to the decisions of these agencies in determining eligibility. Rather he argued that the Plan was invalid insofar as it refused retroactive payment of benefits where the agency had taken an unreasonably long time in determining that he had indeed been eligible.

The action was brought as a class action but the late Judge Judd denied certification under F.R.Civ.P. 23(a). In an opinion reported in 432 F.Supp. 1037 (1977), familiarity with which is assumed, Judge Platt granted plaintiff's motion for summary judgment with respect to the claim under the Taft-Hartley Act [1] and consequently did not reach what he characterized as "the more difficult question of jurisdiction under ERISA." *Id.* at 1039. Although the complaint had sought "costs and interests, and attorneys fees", the judgment, entered by the clerk on June 15, 1977, recited only that it is

1. The court also granted a motion by plaintiff to dismiss a counterclaim by defendant, which is not here relevant.

2. This was later increased to $28,766.25 to include services in opposing the motion for an extension of time and on the appeal. The award to Fase was for $7,500.

3. We likewise find the question with respect to the timeliness of the motion to award counsel fees to present some difficulty. In arguing that the motion had to be made within the ten days provided by F.R.Civ.P. 59(3), SWPP relies on *Stacy v. Williams*, 50 F.R.D. 52 (N.D.Miss. 1970), aff'd, 446 F.2d 1366 (5 Cir. 1971). See also *Du Buit v. Harwell Enterprises, Inc.*, 540 F.2d 690 (4 Cir. 1976). Plaintiff's counsel seeks to distinguish *Stacy* on the basis that here but not there the complaint had sought attorney's fees. This court has not had occasion to deal with the problem directly but has discussed it in the context of determining whether failure to fix attorneys' fees provided by contract deprived a judgment of the finality required for

Ordered and Adjudged that plaintiffs' motions for summary judgment as to pension benefits from August 1, 1972 to February 1, 1975 and on the defendants' counter claim, are granted.

On July 13, 1977, SWPP filed a concededly untimely notice of appeal and moved for an extension of time under F.R.A.P. 4(a); Judge Platt granted the motion on September 12. Plaintiff contended on appeal that the district court had erred in granting the extension since there was no sufficient showing of excusable neglect. We sustained this contention and dismissed the appeal, 574 F.2d 72 (1978).

Meanwhile plaintiff had moved, on July 14, 1977, for the award of attorney's fees of $20,175 [2] "on the theory that he has secured a common benefit accruing to other Plan beneficiaries" and also because such an award was authorized by § 502(g) of ERISA, 29 U.S.C. § 1132(g), in any action arising under that statute. Expressing some doubt whether he had authority to entertain the motion in light of F.R.Civ.P. 59(e), which requires that

A motion to alter or amend the judgment shall be served not later than 10 days after entry of the Judgment

the judge denied the motion on the merits.[3]

■ The judge was clearly justified in concluding that the attorney's efforts had

appeal. See *Aetna Casualty & Surety Co. v. Giesow*, 412 F.2d 467 (2 Cir. 1969); *Union Tank Car Co. v. Isbrandtsen*, 416 F.2d 96 (2 Cir. 1969); and *Cinerama, Inc. v. Sweet Music, S.A.*, 482 F.2d 66, 70 n. 2 (2 Cir. 1973). As indicated by dictum in *Cinerama*, cases where attorneys seek, long after judgment, to be paid out of a fund created by the judgment, *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), or earmarked assets whose distribution would be governed by the legal principle which plaintiff's attorney had established, *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), but see opinions on remand, 28 F.Supp. 229 (D.Me.1939), aff'd, 110 F.2d 174 (1 Cir. 1940), present a lesser problem than those where allowance of a fee will result in an addition to the amount awarded by the judgment. Something may also turn on whether the client is merely seeking to be partially relieved of the burden of paying his attorney, as in *Stacy* and *Du Buit*, or, as here, the lawyer

not produced such financial benefits to persons other than Fase as would warrant the imposition of an attorney's fee upon SWPP. In denying the motion for class certification, Judge Judd had found that there were only twenty-four other members of the Plan who had encountered some delays as a result of the requirement of obtaining a determination from the Social Security Administration and only two who had experienced such long delays as plaintiff. Under the peculiar circumstances of this case, where defendant's appeal was dismissed as untimely, it is at least doubtful whether Fase's unreviewed judgment would work as a collateral estoppel in favor of another similarly situated plaintiff under *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), even though inability to obtain review was the result of SWPP's neglect, see Restatement of Judgments 2d § 88 (Tent.Draft No. 2, April 15, 1975).[4] The doubt is particularly acute in view of the questions concerning the applicability of § 302(c)(5) of the Taft-Hartley Act to a case like this which were raised in *Lugo v. Employees Retirement Fund of Illumination Products Industry,* 529 F.2d 251, 254–55 (2 Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976), and *Riley v. MEBA Pension Trust,* 570 F.2d 406, 412–13 (2 Cir. 1977). Even if *Blonder-Tongue* should be applicable, the financial benefit of Fase's success would accrue to a relatively few members of the Plan, which provides pension as well as disability benefits, and any fee payable to counsel other than by his client should be paid by them. Cf. *Nolte v. Hudson Nav. Co.,* 47 F.2d 166 (2 Cir. 1931); *Abbott, Puller & Myers v. Peyser,* 75 U.S. App.D.C. 162, 124 F.2d 524 (1941); *United States v. ASCAP,* 466 F.2d 917, 918 (2 Cir. 1972); *Dawson, supra,* 87 Harv.L.Rev. 1597, 1628–29, 1633–34 (1974). The case is thus quite unlike *Van Gemert v. The Boeing Company,* decided December 21, 1978 (en banc), where we held that counsel fees may be awarded against the total judgment recovered in a class action and not merely against the share claimed by the members of the class.

To overcome this obstacle plaintiff's attorney invokes *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), and *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

The *Mills* case concerned a corporate merger of Electric Auto-Lite Company with its controlling stockholder, Mergenthaler Linotype Company. Some minority shareholders of Auto-Lite, complaining both derivatively on behalf of the corporation and as representatives of all minority shareholders, had shown that the proxy statement soliciting their assent to the merger was materially misleading in that it did not disclose that all of Auto-Lite's directors were nominees of or controlled by Mergenthaler. In allowing them attorney's fees in the absence of any monetary recovery, the Court reasoned that plaintiffs had furnished "a benefit to all shareholders by providing an important means of enforcement of the proxy statute," *Mills, supra* at 396, 90 S.Ct. at 628. *Hall v. Cole* applied the *Mills* principle to sustain an award of counsel fees to a union member who had secured reinstatement after being expelled in violation of the "Labor Bill of Rights" contained in § 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(2). Counsel alleges that he performed a similar service in bringing the Plan into conformity with the Taft-Hartley Act, thereby shielding the Plan from possible loss of tax exemption under 26 U.S.C. §§ 401 and 501(a).

---

is asserting a right of his own, the leap "across the gulf" taken by *Pettus* in the "common fund" context, see Dawson, Lawyers and Involuntary Clients: Attorney Fees from Funds, 87 Harv.L.Rev. 1597, 1602–06 (1974); in the latter type of case it is easier to characterize the proceedings as "collateral" or "independent." We raise these as points meriting attention in future cases rather than as indicative of what our decision would be.

4. We are not impressed with the spectre, raised by plaintiff's counsel, of defendants' deliberately failing to appeal in order to thwart the entitlement of a plaintiff's lawyer to counsel fees. Such cases can be dealt with when, and if, they arise. Clearly that was not the situation here.

While the contention is ingenious, the district court was justified in dismissing it as pressing *Mills* and *Hall v. Cole* beyond the breaking point, especially in light of the admonitions of *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 263–71, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Apart from the limited effect of the unreviewed district court opinion, 432 F.Supp. 1037, as collateral estoppel or even as precedent which we have noted above, Fase was not vindicating any broad national policy such as truth in securities[5] or union free speech. The point at issue was SWPP's having adopted a method for determining eligibility for disability benefits which would ease its administrative burdens and apparently worked satisfactorily in most instances but which the district court found to have caused undercompensation to Fase because of the long delays he had encountered and the absence of any provision for retroactive payment. Although I.R.C. § 401 requires that in order to be qualified a trust must be for the exclusive benefit of employees or their beneficiaries, the Internal Revenue Service makes its own determination of eligibility and we have been cited to no authority that the I.R.S. regards itself as bound by court decisions finding plans violative of § 302(c) of Taft-Hartley because of being structurally unfair. We were told at argument that the Internal Revenue Service had never questioned the eligibility of the Plan for tax exemption and that it has renewed its approval despite the Plan's having retained the provision found objectionable as applied to Fase. Appellant has not argued that his fees should be allowed by analogy to the principle that the lawyer for the beneficiary of an estate or trust being administered by a fiduciary can recover from the fund for participating in litigation that helps to resolve uncertainty over the meaning or validity of a provision in the governing instrument, see Dawson, *supra*, 87 Harv.L.Rev. at 1629–30; in any event such cases rest on the conclusive effect of the litigation, which Fase's lacked. The district court thus acted well within the bounds of its discretion in concluding that any benefit conferred by plaintiff's attorney on anyone other than Fase was altogether too tenuous to support an award of attorney's fees against the Plan under general principles of law. Cf. *Burroughs v. Board of Trustees*, 542 F.2d 1128 (9 Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977).

This brings us to the claim under ERISA § 502(g), 29 U.S.C. § 1132(g), which provides

> In any action under this subchapter by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

The provision is discretionary, not mandatory. An altogether sufficient support for the court's decision not to award attorney's fees under ERISA is that the attorney obtained no relief under that statute. Having determined, whether rightly or wrongly, that plaintiff was entitled to relief under § 302(c)(5) of the Taft-Hartley Act, the district judge was under no obligation to consider the alternative claim under ERISA simply because that would afford a stronger basis for the award of attorney's fees.[6]

Affirmed.

---

**5.** Beyond this *Mills* has left some disturbing questions in its wake, notably, the justification, under a common benefit theory, for charging the fees not to the class of minority stockholders or even to all stockholders of Auto-Lite, but to the merged company. See The Supreme Court, 1969 Term, 84 Harv.L.Rev. 1, 215–18 (1970); Note, The Allocation of Fees after *Mills v. Electric Auto-Lite Co.*, 38 U.Chi.L.Rev. 316 (1971); Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L. Rev. 849, 866–69 (1975). In *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1308–09 (2 Cir.

1973), a majority of the panel explained this as resting on the basis that the plaintiff stockholders had performed a duty which Auto-Lite should have performed, that it would therefore have been proper to impose liability on Auto-Lite and that, since Auto-Lite had gone out of existence, liability rested on the surviving company as transferee. There is no corresponding basis here for imposing liability on all members of the Plan.

**6.** The question of the applicability of ERISA has its difficulties, as the court recognized, 432

F.Supp. at 1039. Although plaintiff is correct
in saying that § 502(a) of ERISA, 29 U.S.C.
§ 1132(a), which gives the federal courts juris-
diction over the actions there described, be-
came effective upon enactment, September 2,
1974, see *Morgan v. Laborers Pension Trust
Fund for Northern California*, 433 F.Supp. 518,
525 (N.D.Cal.1977), most of the fiduciary provi-
sions and the attendant preemption of State

laws took effect only on January 1, 1975. See
*Riley v. MEBA Pension Trust, supra*, 570 F.2d
at 413. On the theory of accrual of a cause of
action under ERISA most favorable to Fase,
namely that a separate cause of action accrued
on the non-payment of any monthly instalment,
see *Riley, supra*, 570 F.2d at 411–12, he was
denied only one monthly payment after Janu-
ary 1, 1975.