**C–THRU PRODUCTS, INC. and Leon Laguerre, Plaintiffs-Appellants,**

v.

**UNIFLEX, INC., Defendant-Appellee.**

No. 432, Docket 31895.

United States Court of Appeals
Second Circuit.

Argued June 11, 1968.

Decided July 10, 1968.

George Vande Sande, of Moore & Hall, Washington, D. C. (Arnold L. Silberman, of Dreiband, Silberman & Singer, New York City, on the brief), for plaintiffs-appellants.

Robert F. Ziems of Lane, Aitken, Dunner & Ziems, Washington, D. C. (William F. Suglia, New York, City, on the brief), for defendant-appellee.

Before FRIENDLY, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The Inventor Leon Laguerre, owner of Patents Nos. 3,140,038 and 3,227,358, and C-Thru Products, Inc. (by change of name CTP Industries Inc.), exclusive licensee in the United States under these patents, appeal from a summary judgment in the District Court for the Eastern District of New York, John R. Bartels, Judge, holding both patents invalid. The defendant-appellee Uniflex, Inc. manufactures and sells handle bags which appellants allege infringe the Laguerre patents. We find no error and affirm the judgment.

The first patent ("Laguerre I") is on a "handle and closure device for thermoplastic bags." The device consists of a pair of strips or bands of thermo-

plastic material adapted to be sealed by heat welding along the edges of a thermoplastic bag. Each band is provided along one of its edges with a central gripping handle or bow; thus there is a pair of handles to be attached to the bag. One of the pair of bands is provided with studs, the other with recesses; the studs and recesses are matched, and so shaped as to provide a snap-action type of fastening so that the bag to which the bands are attached can be securely closed. The bands are to be fitted at the mouth of the bag, and the studs and recesses are located in the zones where the bows, or handles, are attached to the bands. There are four claims,[1] each of which includes a bag with flexible strips or bands. The only significant differences among the four claims relate to the nature of the ma-

terial from which the bag and/or device are made.

The three claims accompanying the original application for this patent were rejected as covered by prior art and thereafter cancelled. The four claims now at issue were once rejected by reason of the prior art, although the applicant argued that in each claim an essential feature was recited, being "the arrangement of the junction points where the handles on the two strips merge with their respective strips, and the location of the fastening elements in these widened areas. This arrangement is not found in any of the cited patents." After the rejection, the applicant submitted a responsive letter pointing out that the location of the fastening members in the area where the handles connect with the strips "results in improved convenience in opening, since it is merely necessary

1. 1. A handle and closure device fitted at the mouth of a bag composed of thin, flexible sheet material, said device comprising two flexible plastic strips attached along the opposite edges of the mouth of the bag, a central gripping bow formed integrally along one edge of each strip, complementary projections and recesses also formed integrally on said strips and which consist on the one strip of studs, on the other strip of corresponding recesses, said projections and recesses registering with each other and being located in the zones where each bow is connected to its strip, said studs and recesses being adapted to engage each other by snap action for releasably coupling said strips and bows.

2. A bag of thin, flexible sheet material having its mouth defined by two parallel edges, a flexible strip of plastic material attached along each of said edges, a central gripping bow formed integrally on one edge of each strip, complementary projections and recesses also formed integrally on each strip and consisting on the one strip of studs and on the other strip of corresponding recesses, said studs and recesses registering by pairs and being located in the zones where each relevant bow is attached to the corresponding strip, said studs and recesses being adapted to engage each other by snap action for releasably coupling said strips and bows.

3. A thermoplastic bag having its mouth defined by two parallel edges, a flexible strip also of thermoplastic material heat-welded along one of said edges, a central gripping bow formed integrally on one edge of said strip, complementary projections and recesses also formed integrally on each strip and consisting on the one strip of studs and on the other strip of corresponding recesses, said studs and recesses registering by pairs and being located in the zones where each relevant bow is attached to the corresponding strip, said studs and recesses being adapted to engage each other by snap action for releasably coupling said strips and bows.

4. A bag of thin, flexible sheet material having its mouth defined by two opposed sheets, a strip of material stiffer than the material of the body of the bag secured along the top edge of each of the sheets, each of the strips being of a length corresponding to the length of the top edge to which it is secured, each of the strips being formed with an integral, upwardly-disposed loop forming a handle, each of the loops having widened areas at their bases or points of joinder to the strips, one of the loops having male snap fastener elements located in said widened areas, the other loop having female snap fastener elements located in its widened areas, the snap fastener elements on the strips being adapted for inter-engagement to thereby detachably secure the strips together and close the mouth of the bag.

to pull the handles apart from each other to gain the leverage afforded by the peripheral length of the bows to assist in prying apart the interlocking projections and recesses." The application thus amended, a patent was issued.

The second patent ("Laguerre II") has, as amended, a single claim,[2] which is directed to a handle and closure device per se rather than to the combination of a handle and bag. The elements of the claim, as with Laguerre I, are flexible bands or strips adapted to be sealed to a bag by heat welding, a central gripping bow formed on each strip, and the complementary studs and recesses. There is, however, no limitation as to the location of the fastening members in the zones in which the handles are connected to the strips. The application for this second patent originally asserted five claims, rejected on grounds of double patenting and of obviousness. The applicant responded, as to the first claim, that it was a "sub-combination" of some of the elements of Laguerre I. The examiner again rejected that claim, but stated that the filing of a terminal disclaimer would obviate the rejection. The terminal disclaimer was filed and the second patent was issued shortly thereafter.

The District Court held both Laguerre patents invalid on the ground that they represent a combination of elements anticipated in the prior art which was obvious to a person skilled in the art at the time and which added no invention to the combination of elements. It further held that the amendments to the application for the first patent (through the responsive letter) created a file wrapper estoppel limiting the patent to a device where the studs and recesses are located in the zone where the handles intersect the bands or strips, and that the effect of the estoppel could not be avoided by the filing of the second application with a terminal disclaimer.[3]

The appeal presents four basic issues: (1) whether the appeal should be dismissed as untimely; (2) whether this was an appropriate case for summary judgment; (3) whether the District Court erred in its conclusion of "obviousness"; and (4) whether the District Court was correct as to the combined issue of file wrapper estoppel and double patenting. In view of our determination of the first three issues, the fourth need not be reached.

 (1) We reject the contention that the appeal is barred as untimely. The amended judgment was filed July 24, 1967. Notice of appeal and bond were filed September 20, 1967, with a motion to grant additional time to file the appeal. Affidavits and memoranda on the motion were filed by defendant September 29 and plaintiffs on October 2. Hearing was had on October 4, decision rendered October 10, an order extending time on a sufficiently supported finding of excusable neglect was entered October 25, and an order that the notice of appeal filed September 20 be deemed timely filed, was entered November 2.

Appellee contends that Rule 73, setting the time for appeal at 30 days and permitting extension of time for not more than an additional 30 days on a showing of excusable neglect, must be strictly

2. A handle and closure device adapted to be fitted in a thermoplastic bag which comprises two flat generally rectangularly shaped thermoplastic strips adapted to be heat welded along the two opposed edges of the opening of said bag, each of said strips being bounded by two substantially parallel edges; a centrally disposed looped gripping handle formed integrally with said strip and extending laterally of one of said edges, complementary projections and recesses formed on said strips and adapted to engage each other by releasably coupling said strips in parallel coextensive relation, in which condition said gripping handles overlie each other in like coextensive relation.

3. In summarizing his opinion, Judge Bartels stated that both patents were held invalid both on the ground of obviousness and for "double patenting." Even if the ruling is correct on the double patenting-file wrapper estoppel point, however, it would seem that only the *second* patent would be affected.

construed to require that the showing must be made and order entered within the 60-day period following entry of the judgment from which appeal is taken. Such an interpretation would be unduly harsh and contrary to the spirit and purpose of Rule 73 as in effect in 1967. The time limitation is intended to set a period on which the parties may rely for required action by a litigant, not to dragoon a busy trial court into hasty and ill-considered action by the risk of destruction of appellate rights if the court does not meet the fixed deadline. We may note in this case appellee took nine days, extending over the expiration of the sixty-day period, to respond. On September 20 appellee was on timely notice so that it might take whatever steps were needed to prepare to resist the appeal. Appellants' action was timely, and the court's ruling effective. Compare Evans v. Jones, 366 F.2d 772, 773 (4 Cir. 1966).

■ (2) Appellant argues that there are basic and material facts in dispute which make summary judgment in this case improper. But at the hearing on appellee's motion for summary judgment, appellants' counsel agreed that there were no facts in dispute. Appellant now stresses that in patent cases summary judgment is often inappropriate by reason of the necessity to inquire into the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the art. See Graham v. John Deere Company of Kansas City, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L. Ed.2d 545 (1966). In many cases involving a question of patent validity such inquiry involves consideration of technical questions which are often best understood with the aid of expert testimony. But in this case, as Judge Bartels pointed out (Appellants' appendix, p. 6a), the prior art and the patent claims are not complex and are easily understandable without expert aid. This is one case where it truly would be "an absurd waste of time and effort" to deny summary judgment. See Vermont Structural Slate

Co., Inc., v. Tatko Bros. Slate Co., Inc., 233 F.2d 9, 10 (2 Cir. 1956), cert. denied 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123.

■ (3) The District Court concluded that the inventions claimed in the two Laguerre patents were obvious as combinations of elements already disclosed in four prior patents: Hollis, U. S. Pat. #979,763; Verlin, U. S. Pat. #2,722,367; French, #1,132,628; and Harrah, U. S. Pat. #2,978,769. The court also found that the combination of the elements already disclosed did not contribute anything to the art, the combination being obvious without the exercise of invention.

Specifically, the court pointed out first that the principle of locating the closure device at the juncture of strip and handle was disclosed in both the Hollis and French patents; indeed, the Hollis patent, issued in 1910, specifically discloses that such placement of the fastening members at the point where the handles attach is advantageous because it allows them to be disengaged by pulling on the handles. Secondly, it pointed out that the principle of a thermoplastic bag with thermoplastic strips heat-welded to it is disclosed in the Harrah patent. Third, the principle of coextensive strips with coextensive handles is found in the Verlin and Hollis and French patents. Fourth, the stud-recess closure device was disclosed in the Harrah, French and Hollis patents. Claim four of Laguerre I, providing that the handles have widened areas at their points of attachment to the strips, was held to be an obvious expedient for strengthening the assembly, adding nothing to the claim.

Appellants seek to overturn these conclusions by considering each of the four patents in turn and arguing that the District Court was mistaken as to what each disclosed. First, it is argued that as to the French patent, which is in the French language, the Court relied on a poor translation. However, it is not necessary to rely on the French patent, since as is clear above, the District Court could find

obviousness by reference to the other three patents alone.

*Harrah.* Appellants do not dispute that Harrah discloses the device of a thermoplastic bag with the handle strips heat sealed to it. They do contend, however, that Harrah does not disclose a stud and recess closure means, but instead a "slideless or 'zipper type' closure." The closure device is diagrammed at p. 39a of Appellants' appendix; it is quite plain that a stud and recess closure device would be obvious given the diagrammed closure device, which consists of a long ridge to be pressed into a long recess.

*Verlin.* Appellants attack the reliance on this patent, arguing that it does not locate the closure device at the juncture of the strip and handle, does not disclose a stud-recess type of closure device, does not disclose a thermoplastic bag or strip, and does not disclose heat welding the bag to the strip. The Verlin patent does disclose, however, coextensive strips with coextensive handles, and that is all that the District Court relied on it for.

*Hollis.* Appellants argue that this patent was issued in 1910, disclosing a hand bag "particularly for use of church-goers and to contain prayer books and other accessories such as rosaries, etc.," as though that were relevant. They object that the closure means is on the outside of the bag; they can hardly argue seriously that it is invention to put it on the inside. The only relevance of Hollis, they argue, "is its disclosure of the use of snap fasteners which are located at the point where the flexible strap is affixed to the lip * * *" But that is just the point; that disclosure, together with the coextensive strip and handle disclosure of Verlin and the thermoplastic heat sealing disclosure of Harrah, is enough for a finding of obviousness.

We agree with the Court's conclusion that the claims in these two patents are invalid under the test of Section 103 of the Patent Act of 1952, 35 U.S.C. § 103 (1964 ed.), since the differences between them and the pertinent prior art would have been obvious to a person reasonably skilled in that art. Graham v. John Deere Co., supra.

Judgment affirmed.