574 F.2d 72
 97 L.R.R.M. (BNA) 3010, 83 Lab.Cas. P 10,399
 Adrian FASE, Individually and on behalf of all others
similarly situated, Plaintiff-Appellee-Appellant,
v.
SEAFARERS WELFARE AND PENSION PLAN, Joseph DiGiorgio,
Individually and in his capacity as the Secretary-Treasurer
of the Seafarers Welfare and Pension Plan, Price C. Spivey,
Individually and in his capacity as the Administrator of the
Seafarers Welfare and Pension Plan, and Fred Farnen, Lindsey
Williams, Joseph DiGiorgio, Frank Drozak, E. Aubusson, Capt.
Joseph Cecire, James Hayes, C. J. Bracco, William Crippen,
Irving M. Saunders, in their capacity as Trustees of the
Seafarers Pension Plan, Defendants-Appellants-Appellees.
 Nos. 217, 253, Dockets 77-7380 and 77-7489.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 7, 1977.
Decided Feb. 22, 1978.
 
 David S. Preminger, Legal Services for the Elderly Poor, New York City, for plaintiff-appellee-appellant.
 Carolyn Gentile, Brooklyn, N. Y., for defendants-appellants-appellees.
 Before FRIENDLY, SMITH and MESKILL, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 On June 14, 1977, the United States District Court for the Eastern District of New York, Thomas C. Platt, Judge, granted summary judgment in favor of Adrian Fase, a permanently disabled former merchant seaman, and ordered the Seafarers Welfare and Pension Plan ("the Plan") to pay Fase retroactive disability benefits that it had previously denied him. The district court based its decision on § 302(c)(5) of the Labor-Management Relations (Taft-Hartley) Act, 29 U.S.C. § 186(c)(5) ("LMRA"). The decision is reported officially. Fase v. Seafarers Welfare and Pension Plan, 432 F.Supp. 1037 (E.D.N.Y.1977). Copies of the district court's memorandum decision and order were promptly mailed to the parties, and the clerk's office entered final judgment. More than one month later, on July 18, 1977, the Plan filed a notice of appeal with the district court. This notice was concededly outside of the 30-day period for filing notice of appeal under Fed.R.App.P. 4(a), so the Plan moved for an extension of the period for filing, as also provided by Rule 4(a), alleging that its tardy filing was due to "excusable neglect." The district court granted the Plan's motion for an extension. We hold that the Plan did not make a sufficient showing of "excusable neglect." Accordingly, this Court is without jurisdiction to consider the merits of the Plan's appeal and the appeal must be dismissed.
 
 
 2
 In July of 1971 Adrian Fase was forced to quit his job as a merchant seaman because of a serious back ailment. Fase was a member of the Seafarers International Union of North America and, as a result, participated in the Seafarers Welfare and Pension Plan, a jointly administered labor-management trust fund established pursuant to § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c) (5).[1] On November 22, 1971, Fase applied to the Plan for disability benefits, having been declared by the United States Public Health Service to be permanently unfit for sea duty. At the time of this application, Fase satisfied all but one of the Plan's eligibility requirements, that being the requirement that applicants who are covered by Social Security must apply for and receive a disability award from the Social Security Administration as proof of total and permanent disability. Once such a determination is made by the Social Security Administration, the Plan is bound by it.[2] Because Fase was covered by Social Security, the Plan held his application for benefits in abeyance, and Fase immediately applied to the Social Security Administration for a determination of disability. Had he not been covered by Social Security, the Plan would have made its own independent determination whether Fase was in fact totally and permanently disabled, and if he was found to be so disabled, payments would have commenced promptly.
 
 
 3
 Unfortunately for Fase, his initial application to the Social Security Administration was denied. However, after an exhaustion of appeals within the Social Security system, and after review and remand by the United States District Court for the Eastern District of New York, the Social Security Administration granted Fase's application on August 8, 1974. It determined that Fase had been disabled within the meaning of the Social Security Act as of July 12, 1971, and awarded him benefits, retroactive to the time of his disability.
 
 
 4
 In January, 1975, Fase presented his first Social Security disability check to the Plan as proof of the Social Security Administration's determination of disability, and on January 22, 1975, the Plan approved his application. The Plan began making payments of $250 per month on February 1, 1975. Unlike the Social Security award, however, the Plan's payments did not include retroactive benefits. Upon learning of this, Fase inquired as to his benefits for the period of time from his application in November, 1971, through its approval in January, 1975. He was told that the Plan authorized the commencement of disability payments no earlier than the first day of the month following the Plan's approval of the application and that there was no provision for retroactive benefits.[3]
 
 
 5
 This denial of retroactive benefits prompted Fase to sue the Plan in the United States District Court for the Eastern District of New York. Fase asserted that the Plan had violated § 302(c)(5) of the LMRA, because it was not for the "sole and exclusive benefit of the employees," and that the district court had jurisdiction under § 302(e) of that Act.[4] Essentially, Fase argued that the Plan could not require him to submit evidence of a disability award from the Social Security Administration as a condition of eligibility for benefits under the Plan and then refuse to pay him retroactive benefits for the period of time spent in obtaining from that agency a favorable determination. Fase also asserted that the district court had jurisdiction to hear claims made under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA").
 
 
 6
 The district court agreed that it had jurisdiction under the LMRA, referring to Lugo v. Employees Retirement Fund of the Illumination Products Industry, 529 F.2d 251 (2d Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976), Cuff v. Gleason, 515 F.2d 127 (2d Cir. 1975), and Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Compare Prescription Plan Service Corp. v. Franco, 552 F.2d 493, 495-96 (2d Cir. 1977). The district court also found in favor of Fase on the merits and granted summary judgment, awarding pension benefits from August 1, 1972, to February 1, 1975. The court believed that Fase had made a prima facie showing of the Plan's unreasonableness[5] and that the Plan's administrative and financial justifications were inadequate. It held that "the Plan arbitrarily and capriciously denied (Fase) benefits for the disputed period, and as such was a violation of the sole and exclusive benefit requirement of § 302(c)(5) of the (LMRA)." 432 F.Supp. at 1042. But see Riley v. MEBA Pension Trust, 570 F.2d 406, 412-13 (2d Cir. 1977). The district court's resolution of Fase's LMRA claims made it unnecessary to reach his ERISA claims and the court declined to do so.
 
 
 7
 The district court ruled in favor of Fase on June 14, 1977. The next day the clerk's office of the Eastern District mailed copies of the district court's memorandum decision and order to the parties and entered judgment on the docket sheet. The clerk's office did not send notice of the entry of judgment to the parties.[6] The Plan received the copies of the opinion and order on June 16. On July 18, more than one month later, the attorney for the Plan received Fase's bill for costs. Apparently, receipt of this bill prompted the attorney to investigate the status of the case and, having discovered that judgment had been entered, she filed a notice of appeal. This notice of appeal was concededly outside of the 30-day limit established by Fed.R.App.P. 4(a), and on July 20 the Plan filed a motion for an order extending the time to file its notice of appeal together with an affidavit explaining the circumstances of the delay. The Plan argued that the delay was due to "excusable neglect" and that, therefore, the time for filing should be extended under Rule 4(a). On September 12 the district court granted the motion. Fase challenges this decision.
 
 
 8
 Rule 4(a) of the Federal Rules of Appellate Procedure requires that a notice of appeal in civil actions such as this one "shall be filed with the clerk of the district court within 30 days of the date of the entry of the judgment or order appealed from." The purpose behind this time limitation is to provide a definite point at which, in the absence of a notice of appeal, litigation will come to a close. See In re Orbitec Corp., 520 F.2d 358, 362 (2d Cir. 1975); C-Thru Products, Inc. v. Uniflex, Inc., 397 F.2d 952, 955 (2d Cir. 1968). "Because the timely filing of a notice of appeal is 'mandatory and jurisdictional,' United States v. Robinson, 361 U.S. 220, 224, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960), compliance with the provisions of (Rules 3 and 4) is of the utmost importance." Advisory Committee Note to Fed.R.App.P. 3; see Stirling v. Chemical Bank, 511 F.2d 1030, 1031 (2d Cir. 1975); Edwards v. Doctors Hospital, Inc., 242 F.2d 888, 891 (2d Cir. 1957), cert. denied, 356 U.S. 930, 78 S.Ct. 770, 2 L.Ed.2d 761 (1958).
 
 
 9
 This schedule for the filing of notice of appeal is not, however, without a certain degree of flexibility. The third paragraph of Rule 4(a) provides as follows:
 
 
 10
 Upon a showing of excusable neglect, the district court may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision. Such an extension may be granted before or after the time otherwise prescribed by this subdivision has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the court shall deem appropriate.
 
 
 11
 The question thus becomes "whether there was excusable neglect entitling appellants, in the district court's discretion, to an extension of time . . . ." Stirling v. Chemical Bank, supra, 511 F.2d at 1032. See generally 9 Moore's Federal Practice P 204.13 (2d ed. 1975). The answer, of course, depends on the meaning given to the phrase "excusable neglect." In this regard, we believe that the determination of "whether neglect is excusable depends on the facts of the case at hand and . . . should be determined on the basis of the 'common-sense meaning of the two simple words applied to the facts which are developed.' " Gooch v. Skelly Oil Co., 493 F.2d 366, 369 (10th Cir.), cert. denied, 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974), quoting Buckley v. United States, 382 F.2d 611, 614 (10th Cir. 1967), cert. denied, 390 U.S. 997, 88 S.Ct. 1202, 20 L.Ed.2d 97 (1968). This common sense approach is to be coupled with an awareness that the "excusable neglect" standard is intended to be a "strict one," Stern, Changes in Federal Appellate Rules, 41 F.R.D. 297, 298-99 (1967), that the party requesting the extension must make a clear showing that the circumstances causing the delay were unique and that the neglect was excusable, Winchell v. Lortscher, 377 F.2d 247, 251, 254-55 (8th Cir. 1967); see Gooch v. Skelly Oil Co., supra, 493 F.2d at 368 ("real showing"); Lowry v. Long Island R.R., 370 F.2d 911, 912 (2d Cir. 1966), and, finally, that "(c)ourts should sanction deviations from the letter of the rules only on the most compelling showing that (the purposes of the Rules) are served," In re Orbitec Corp., supra, 520 F.2d at 362. Under these standards, the Plan's neglect was not "excusable."
 
 
 12
 The Plan asserts and the district court found that, despite the mandate of Fed.R.Civ.P. 77(d),[7] the clerk's office for the Eastern District does not send notice of entry of judgment to the parties. Although we are troubled by this, the failure of the clerk to notify the parties does not excuse the Plan's neglect. "The only effect upon the time for appeal of the failure of the clerk to serve notice of entry of a judgment or order is . . . that the failure may afford a basis for an extension of time." 9 Moore's Federal Practice P 204.03, at 911 (2d ed. 1975) (emphasis in original). Indeed, the rule itself states that "(l)ack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure." In addition, the Advisory Committee Note to Fed.R.Civ.P. 77(d) contains the following explanation:
 
 
 13
 Rule 77(d) as amended makes it clear that notification by the clerk of the entry of a judgment has nothing to do with the starting of the time for appeal; that time starts to run from the date of entry of judgment and not from the date of notice of the entry. Notification by the clerk is merely for the convenience of litigants. And lack of such notification in itself has no effect upon the time for appeal; but in considering an application for extension of time for appeal as provided in (Fed.R.App.P. 4(a)), the court may take into account, as one of the factors affecting its decision, whether the clerk failed to give notice as provided in rule 77(d), or the party failed to receive the clerk's notice. It need not, however, extend the time for appeal merely because the clerk's notice was not sent or received. It would, therefore, be entirely unsafe for a party to rely on absence of notice from the clerk of the entry of a judgment, or to rely on the adverse party's failure to serve notice of the entry of a judgment.
 
 
 14
 The Plan concedes on appeal that it was "awaiting notice of entry of final judgment so that notice of appeal could be filed with the District Court." The only justification it offers is that it is the practice of the other New York district courts to notify parties of the entry of judgment, a practice to which the Plan's attorney has apparently grown accustomed, and that, on July 13 and 14, 1977, the City of New York suffered a blackout. This blackout is relevant only in that it apparently delayed delivery of Fase's bill of costs which, had it been delivered under normal circumstances, would have alerted the Plan to the fact that a judgment had been entered and would thereby have prompted the Plan to file a timely notice of appeal.
 
 
 15
 We cannot agree that these facts warranted the district court's conclusion that the lateness of the Plan's notice of appeal was due to "excusable neglect" under Rule 4(a). Each of the parties received copies of the district court's memorandum opinion and order immediately after they were filed. This in itself should have been sufficient to alert the Plan as to the deadline for filing the notice of appeal. See Linabary v. Maritime Overseas Corp., 376 F.Supp. 688, 689 (S.D.N.Y.1973), aff'd mem., 505 F.2d 727 (2d Cir. 1974). As explained above, the fact that the district court clerk did not send notice of entry of final judgment is not in and of itself sufficient to establish "excusable neglect." Quite to the contrary, Rule 77(d) is consistent with the duty of legal counsel to see that important filing deadlines are met. See Stirling v. Chemical Bank, supra, 511 F.2d at 1032. Although the Plan's attorney would probably have received Fase's bill for costs had there been no blackout, she was not entitled to rely on the diligent billing practices of Fase's attorneys to alert her as to the disposition of her caseload. In sum, therefore, this case presents what appears to us to be a rather run-of-the-mill oversight by the Plan's attorney, not the sort of exceptional circumstances in which an extension is warranted. Here, "the failure to act was the result either of a failure to understand the law, or of one of those careless omissions to which everyone is indeed subject, but which do not excuse inaction." Nichols-Morris Corp. v. Morris, 279 F.2d 81, 83 (2d Cir. 1960) (L. Hand, J.). We are mindful that in most circumstances a district court's finding of "excusable neglect" should be given great deference by a reviewing court, see Lowry v. Long Island R. R., supra, 370 F.2d at 912; Gooch v. Skelly Oil Co., supra, 493 F.2d at 368, but where the losing party has promptly received the court's order and opinion, and the only extenuating circumstance is the failure of the clerk to send notice of entry of judgment, we cannot affirm. See also Brainerd v. Beal, 498 F.2d 901, 903 (7th Cir.), cert. denied, 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974). The appeal is dismissed. No costs.
 
 
 
 [1]
 The statute allows for the establishment of such funds as long as they are "for the sole and exclusive benefit of the employees" and as long as they meet specified requirements regarding their administration
 
 
 [2]
 Article I, Section 4(a) of the Plan provides as follows:
 The Trustees, on the basis of medical evidence, shall be the sole and final judge of total and permanent disability and entitlement to a Disability Pension provided, however, that if an employee is covered by the Social Security Act or the Railroad Retirement Act and is eligible for a disability pension benefit under either of these Acts, he must apply for the disability pension benefit provided by said Act, and the Trustees shall be bound by the determination of the Social Security Administration or the Railroad Retirement Board as to such employee's total and permanent disability.
 
 
 [3]
 Article III, Section I(B) of the Plan provides as follows:
 Payment of Disability Pension Benefits shall commence on the first day of the calendar month next following the later of the following dates:
 (a) The date of receipt by the applicant of his final Sickness and Accident Benefit payment from the Seafarers' Welfare Plan, and
 (b) The date on which the application for a Disability Pension Benefit is approved by the Trustees.
 Fase received Maintenance and Cure Benefits from October 19, 1971, through November 9, 1971, and Sickness and Accident Benefits from November 14, 1971, through July 21, 1972. Although Fase at first claimed to be entitled to benefits as of November, 1971, he eventually conceded that under Article III, Section I(B), he was not entitled to payments until, at the earliest, August 1, 1972, the first day of the month following the month in which Sickness and Accident Benefits terminated. Thus, as the district court found, the issue was the denial of benefits to Fase for the period from August 1, 1972, to February 1, 1975. 432 F.Supp. at 1039.
 
 
 [4]
 Section 302(e) of the LMRA, 29 U.S.C. § 186(e), grants to district courts jurisdiction to "restrain violations" of § 302
 
 
 [5]
 The district court used the following hypothetical example to support this conclusion:
 If two identical members of the Plan had both become disabled in 1971 and had both applied at the same time for benefits from the Plan and from Social Security, the plaintiff argues they should receive the same benefits. In most cases they would receive the same benefits as the parties agree that the Social Security Administration usually acts within a few months. However, if, as in this case, the wheels of the bureaucracy take three years to determine disability as to one of the two identical beneficiaries, then that beneficiary would lose three years of benefits under the Plan. Social Security corrects for this by allowing retroactive payment to the date of disability, but the Plan does not allow this.
 
 
 [432]
 F.Supp. at 1040. In light of our dismissal of this appeal, we, of course, express no view on this issue
 
 
 [6]
 See note 7 infra and accompanying text
 
 
 [7]
 Fed.R.Civ.P. 77(d) provides in part as follows:
 Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers.
 If it is true, as the Plan claims and the district court found, that the clerk's office for the Eastern District does not send notice of entry of judgment to parties, we take this opportunity to remind it of its responsibility to do so.