769 F.2d 911
 2 Fed.R.Serv.3d 385
 In re O.P.M. LEASING SERVICES, INC., Debtor,
James P. HASSETT, as Chapter 11 Trustee of O.P.M. Leasing
Services, Inc., Plaintiff-Appellee,
v.
FAR WEST FEDERAL SAVINGS AND LOAN ASSOCIATION, Euramlease,
Inc. and Henry L. Bauer, as Trustee for
Euramlease, Inc., Defendants-Appellants.
 No. 85-5014.
 United States Court of Appeals,
Second Circuit.
 Argued May 23, 1985.
Decided Aug. 5, 1985.
 
 Harold R. Tyler, Jr., New York City, N.Y. (Patterson, Belknap, Webb & Tyler, Winthrop J. Allegaert, Thomas I. Sheridan, III, Richards O'Neil & Allegaert, New York City, N.Y.), for defendants-appellants.
 Harold N. Schwinger, New York City (Henry L. Goodman, Zalkin, Rodin & Goodman, New York City, N.Y.), for plaintiff-appellee.
 Before FEINBERG, Chief Judge, and FRIENDLY and PRATT, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 This appeal concerns an order of Judge Sand, in the District Court for the Southern District of New York, which denied appellants' motion under FRAP 4(a)(5) for permission to file an out-of-time appeal on the ground of excusable neglect or, in the alternative, for relief from that order under F.R.Civ.P. 60(b).
 
 
 2
 The action is an adversary proceeding brought in the Bankruptcy Court for the Southern District of New York by James P. Hassett, the Chapter 11 trustee of OPM Leasing Services, Inc. (appellee), to recover from Far West Federal Savings and Loan, Euramlease, Inc. and Henry L. Bauer as trustee for Euramlease (appellants) certain sums allegedly obtained through fraudulent conveyances, preferences or postpetition transactions. On May 18, 1984, Bankruptcy Judge Lifland filed a 60-page decision and order awarding appellee recovery of various sums totaling approximately $1 million, In re O.P.M. Leasing Services, Inc., 40 B.R. 380 (S.D.N.Y.1984); judgment was entered on June 8, 1984, and on June 18 the appellants appealed to the District Court.[1] Extensive briefs were filed, and oral argument was heard by Judge Sand on November 21. At the oral argument, Judge Sand granted appellants' motion to enlarge the record on appeal with the consent of appellee. The consent order was entered on November 23, and shortly thereafter appellants' trial counsel[2] received a postcard from the clerk's office advising them of this entry. On November 28, notice appeared also in the New York Law Journal, where it was found by a paralegal employed by appellants' trial counsel who had been assigned the responsibility of checking the Law Journal each day for reports of decisions in the firm's pending cases. On December 4, 1984, Judge Sand filed a two-page opinion and order, reported at 44 B.R. 1023 (S.D.N.Y.1984). Finding it necessary to discuss only one of the points raised by appellants, he concluded that "[t]his contention as well as the other arguments advanced by appellants must be placed in the context of the true relationships among the parties at the time of the actual and purported transactions," that "[t]hese were correctly analyzed and characterized by the court below," and that its rulings should therefore be affirmed. 44 B.R. at 1023. On the same day there was filed a stipulation and order enlarging the record on appeal to include an additional exhibit. The district court's docket sheet contains entries describing both these orders dated "12-4-84," and the New York Law Journal of December 7, 1984, reported that there were "[o]rders signed" in the case on December 4. It does not appear that either side received a postcard from the clerk's office notifying them of the December 4 affirmance. Judge Sand found, however, that "[p]ursuant to the standard practices in chambers, copies of the Opinion were mailed to the attorneys for all parties...." Counsel for appellee received their copy on December 6; trial counsel for appellants alleged that they never received a copy.
 
 
 3
 The 30-day period provided in FRAP 4(a)(1) for the taking of an appeal expired on January 3, 1985, without any appeal having been taken. Cf. FRAP 26(a). On January 9, appellants' trial counsel hand delivered a letter to Judge Sand, with a copy to opposing counsel, calling attention to a decision rendered by this court on December 20, 1984, which was thought to be relevant. This produced a telephone call from the judge's chambers on January 10 informing trial counsel that the case had been decided on December 4. On January 14, 1985, trial counsel moved under FRAP 4(a)(5)[3] for permission to file an out-of-time notice of appeal. In the alternative, trial counsel requested that the court relieve appellants from the December 4 order under F.R.Civ.P. 60(b)(6) and enter a new order, thus beginning a new 30-day time period for filing a notice of appeal. The motion was argued on January 24, 1985, and denied in an opinion filed January 30, 1985. This appeal followed.
 
 
 4
 Appellants' case can be summarized as follows: Trial counsel allegedly did not know of the December 4, 1984 order until their letter of January 9, 1985, triggered the telephone call from Judge Sand's chambers on January 10. They assert that no notice of entry was mailed by the Clerk's office as required by F.R.Civ.P. 77(d). This is corroborated by the failure of appellee's counsel to receive any such notice and is explained by an apparent practice whereby Judge Sand's docket clerk would not send notice of entry whenever the Judge's secretary sent copies of the opinion to counsel, as she was instructed to do. Appellants do not dispute that Judge Sand's secretary mailed copies of the opinion to counsel for all parties in this instance, as Judge Sand permissibly found.[4] Trial counsel asserted rather that no copy was ever received by them, and the judge, for purposes of decision, assumed this to be true; we shall do the same here. No affidavit was submitted by the paralegal who was in charge of checking the Law Journal in the office of appellants' trial counsel. Appellants' trial counsel averred that the paralegal could not account for having missed the notice published in the Law Journal on December 7. Counsel offered as a possible explanation that the Law Journal of that date contained decisions handed down on December 3, 4 and 5;[5] that the December 3 decisions included one by Judge Sand on a different matter; and that, having seen this, the paralegal might not have noticed that in addition to the partial list of decisions of December 3, the Law Journal went on, immediately following, with two columns of December 4 decisions, including four by Judge Sand, and more than a column of December 5 decisions.[6] To explain why he failed to check the court's docket sheet or to contact Judge Sand's chambers during this period, counsel suggested that he could not reasonably have anticipated that Judge Sand would decide the case as speedily as he did. Counsel called attention to the length of time the bankruptcy court had taken to decide the case and the length of its opinion; the size of the record and of the briefs;[7] the size of the judgment (after interest, more than $1,200,000); the approach of the Thanksgiving, Christmas and New Year holidays; the lack of urgency in deciding the appeal since it had been fully bonded and had been on the district court's docket less than four months; and the presence of what allegedly was an issue of first impression and public importance. For these reasons counsel expected that the case would not be decided until at least after the beginning of the New Year, i.e., five or six weeks after the argument rather than the 13 days it actually took.
 
 
 5
 Appellee relies in opposition on the principle established by many cases, of which it suffices to cite Lowry v. Long Island R.R., 370 F.2d 911, 912 (2 Cir.1966), and Fase v. Seafarers Welfare & Pension Plan, 574 F.2d 72, 77 (2 Cir.1978), and not disputed by appellants, that the standard for review of a district court's refusal to extend the time to take an appeal is "abuse of discretion." See generally 9 Moore's Federal Practice p 204.13 (2d ed. 1985). Appellee argues that Judge Sand did not abuse his discretion in denying appellants' motion. Appellants' position is not that the district judge abused his discretion but that he declined to exercise it because of an erroneous belief that precedents deprived him of any. They urge that we either grant the requested leave or remand to the district judge to take action free from the trammels he improperly imposed upon himself.
 
 
 6
 In light of the dispute over what the district judge did, we must analyze his opinion with care. After stating the facts, Judge Sand first addressed appellants' claim that they reasonably did not anticipate a decision by him until some time in 1985. He disposed of this by saying
 
 
 7
 filing deadlines are intended to present clear lines of demarcation and if a subjective, even if reasonable, estimate of the length of time it would require a court to decide a matter would constitute "excusable neglect," all semblance of certainty would vanish from the rules.
 
 
 8
 Clearly this was a rejection because the judge considered the argument to be without merit, not because he considered himself to be without power to consider it.
 
 
 9
 The judge then turned to appellants' argument based on failure to receive notice or a copy of the December 4 order. Quoting the language in F.R.Civ.P. 77(d) that "[l]ack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in [FRAP 4(a) ],"[8] Judge Sand concluded thateven if we assume, as we do for these purposes despite the substantial evidence to the contrary, that no notice was mailed, this would not constitute "excusable neglect."
 
 He then added:
 
 10
 Appellants unpersuasively seek to distinguish such cases as Fase v. Seafarers' Welfare Fund, 574 F.2d 72 (2d Cir.1978) (holding it to be an abuse of discretion to extend time for filing of an appeal, where counsel knew of opinion but did not receive notice of order) and M & T Chemicals, Inc. v. International Business Machines Corp., S.D.N.Y., March 10, 1976, aff'd, August 19, 1976 (CA2d) 22 F.R.Serv.2d 1050 (1976) (failure to receive notice of a denial of rehearing not excusable neglect).
 
 
 11
 After a paragraph not essential to an understanding of the opinion, Judge Sand went on to say (footnote omitted):
 
 
 12
 Nevertheless, the equities in favor of this application are quite strong: considerable sums of money are involved; much time and effort has been expended on the appeal to this Court and a further appeal to a higher court could reasonably have been foreseen; no claim is made of any change in position or other prejudice by the Appellees; the Court can fully appreciate counsel's "surprise" at the expeditious disposition of the appeal.
 
 
 13
 While believing that "in other areas of the law dealing with counsel errors, there has been a trend to relax the rigors of earlier rules," Judge Sand "detect[ed] no similar trend with respect to relaxation of the rules relating to filing deadlines for taking appeals" and held "[s]ince this matter impacts most immediately upon the court of appeals, if there is to be any change in the considerable body of law which holds that mere law office mishaps do not constitute 'excusable neglect,' it must come from the courts of appeals." He concluded the opinion by saying:
 
 
 14
 Believing under the applicable precedents that it would be an abuse of discretion for this Court to do otherwise, the motion is denied.
 
 
 15
 We read the opinion as meaning just what it said. Judge Sand realized that he had the power and the responsibility to consider all the factors urged by appellants to constitute excusable neglect, but recognized also that, in doing so, he was obliged to take into appropriate account the decisions of higher courts and particularly of this one--recognized, in other words, that if this court had held it an abuse of discretion to consider certain conduct to be excusable neglect, he could not properly find it to be such. We do not understand how anyone can legitimately quarrel with this proposition. Orders granting or denying motions under FRAP 4(a)(5) are not immune from appellate review; they differ from some other orders only in that the standard of review is abuse of discretion rather than error. In Lowry, supra, 370 F.2d at 912, we approved as the formulation of "abuse of discretion" applicable in the review of orders with respect to excusable neglect Judge Magruder's definition in In re Josephson, 218 F.2d 174, 182 (1 Cir.1954), that the district court's decision "cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." If, however, a court of appeals has determined that it was an abuse of discretion for a district judge to hold that certain conduct constitutes excusable neglect, it would be pointless as well as improper for another district judge within the same circuit to rule that it did, since reversal would be certain.
 
 
 16
 With respect to appellants' argument that trial counsel's belief that a determination would not speedily be made excused what otherwise would have been a fatal lack of diligence in monitoring the docket, the judge, as indicated above, ruled against appellants on the merits, despite his later remark that he could "fully appreciate counsel's 'surprise' at the expeditious disposition of the appeal." Rejection of this argument surely was not an abuse of discretion. The judge had given no indication whether he would decide the case rapidly, slowly or somewhere in between. Although there was a lengthy record, the district judge was sitting in an appellate capacity and had the benefit of, as he termed it, "the thorough scholarly opinion" of Bankruptcy Judge Lifland. Our own experience in deciding appeals shows that it often is quite feasible to arrive at a sound decision in such a case with considerable speed--at least when, as is not uncommon, the reviewing court finds the opinion below to be so satisfactory that it would be a waste of judicial time to prepare a lengthy opinion of its own. Further, as stated in note 5 to Judge Sand's opinion denying the FRAP 4(a)(5) motion:
 
 
 17
 one of the follies in relying on an estimate of when a court may decide a matter is the inability of counsel to ascertain whether the state of the court's docket permits it to work extensively on the matter at hand or requires it to defer the matter while dealing with more pressing, unrelated cases.
 
 
 18
 This case illustrates the accuracy of Judge Sand's observation. As he stated when signing appellants' order to show cause, he had not anticipated having the time to work on this case due to a 15-defendant criminal trial scheduled to begin on January 7; when circumstances required a two-week postponement of that trial, Judge Sand found that he had the time to turn to this case first. Counsel should not be encouraged to neglect their duty to monitor the docket on the basis of speculation as to the probable date of decision, as distinguished from an assurance by the judge that a decision would not be rendered before a certain date. Cf. Mennen Co. v. Gillette Co., 719 F.2d 568 (2 Cir.1983) (failure to monitor docket excusable when due to misrepresentations of court officer); cf. also Hensley v. Chesapeake & O. Ry., 651 F.2d 226, 230 (4 Cir.1981) (impression that court would require time to reach decision insufficient basis for an award of relief under F.R.Civ.P. 60(b)).
 
 
 19
 With this element out of the case, all that was left on appellants' side was the failure to receive notice of the entry of judgment or a copy of the opinion, and the mistake of the paralegal in overlooking the report of this fact in the Law Journal. As to these, the judge did give heed to precedents. Since there was nothing wrong--in fact everything right--in his doing this, the question is whether he misread or misapplied them in concluding that it would be an abuse of discretion to grant an extension of time on these facts.
 
 
 20
 Before considering the cases in detail, it is well to observe, as said in the Note of the Advisory Committee on Appellate Rules to FRAP 3, that "the timely filing of a notice of appeal is 'mandatory and jurisdictional,' " and "of the utmost importance." Consequently, the requirements of FRAP 4(a)(1) and its predecessors with respect to the time for taking an appeal have long been treated as especially rigid. See, e.g., In re Orbitec Corp., 520 F.2d 358, 362 (2 Cir.1975) ("Courts should sanction deviations from the letter of [FRAP 3 and 4] only on the most compelling showing that [the] purpose [of these rules] are served"). This rigidity rests on the need for the prevailing party to know, at a fixed time, how the litigation stands. See id.; C-Thru Prods., Inc. v. Uniflex, Inc., 397 F.2d 952, 955 (2 Cir.1968); Fase, supra, 574 F.2d at 75. In order to accomplish this goal, the courts must adopt and have adopted a strict interpretation of the words "excusable neglect." Fase, supra, 574 F.2d at 76; Selph v. Council of City of Los Angeles, 593 F.2d 881, 883 (9 Cir.1979); 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure Sec. 3950 at 366 (1977); Stern, Changes in the Federal Appellate Rules, 41 F.R.D. 297, 298-99 (1966). To be sure, in most cases where application for an extension of time is made within the second 30-day period provided in FRAP 4(a)(5), the court's sympathy will lie with the applicant: the hardship of being denied an appeal is great (although perhaps not so great as usually portrayed, especially in a case like this where the decision of an able bankruptcy judge has been affirmed by an able district judge), while the hardship to the prospective appellee is usually small. But a loose interpretation of "excusable neglect" would convert the 30-day period for appeal provided in FRAP 4(a) into a 60-day one--a result clearly not intended by the Rule's framers. Hence, "the burden of demonstrating excusability lies with the party seeking the extension and a mere concession of palpable oversight or administrative failure generally has been held to fall short of the necessary showing...." 9 Moore's Federal Practice, supra, p 204.13[1.-3] at 4-97-98 (footnotes omitted).
 
 
 21
 Judge Sand cited two Second Circuit cases, Fase v. Seafarers Welfare Fund, supra, 574 F.2d 72 (1976), and M & T Chemicals, Inc. v. International Business Machines Corp., 22 F.R.Serv.2d 1050 (S.D.N.Y.), aff'd mem. (2 Cir. Aug. 19, 1976). The Fase case is the more important, since M & T Chemicals was a case in which the district court refused to grant an extension of time under circumstances like those here presented, and thus does not demonstrate that this court would have found an abuse of discretion if the district judge had granted the extension.
 
 
 22
 While Fase did hold that the district court abused its discretion in finding excusable neglect and granting a motion to file an out-of-time appeal, it was a case "where the losing party ha[d] promptly received the court's order and opinion, and the only extenuating circumstance [was] the failure of the clerk to send notice of entry of judgment." 574 F.2d at 77 (emphasis in original). Appellants say their case is different because not only did the clerk fail to send notice of entry of judgment, but their counsel did not learn of the judgment in any other way. In fact, appellants' trial counsel did receive what, in most contexts, would be deemed notice of the entry of the judgment, viz., receipt of the Law Journal for December 7, 1984. Appellants say this should not be considered as notice since, as a result of the error by the paralegal, it did not reach the lawyers in charge of the case. Yet this would seem to be precisely what Judge L. Hand characterized long ago as "one of those careless omissions to which everyone is indeed subject, but which do not excuse inaction." Nichols-Morris Corp. v. Morris, 279 F.2d 81, 83 (2 Cir.1960) (emphasis supplied) (affirming denial of motion for extension of time to file appeal where counsel had discussions with opposing party's counsel about doing so but failed to take any action). We do not understand how the paralegal's failure to see what she had been charged to look for and was in plain sight can be deemed excusable; if this is excusable, it would be hard to conceive what would not be.
 
 
 23
 The effect of the 1946 amendment to F.R.Civ.P. 77(d) was to "charg[e] the prospective appellant with the duty of following the progress of the action and advising himself when the court makes an order he wishes to protest." Long v. Emery, 383 F.2d 392, 394 (10 Cir.1967). Indeed, in Mennen Co. v. Gillette Co., supra, 719 F.2d at 570, this court stated that "it is customarily the duty of trial counsel to monitor the docket and to advise himself when the court enters an order," and that "[o]ne who fails to do so is negligent," although neglect of this duty would be excused when a party was misled by a court officer. Appellants' trial counsel would have obtained notice sufficient to enable them to take a timely appeal if they had checked the docket or communicated with the judge's chambers at any time between December 5, 1984, and January 9, 1985, a period running from the 14th to the 49th day after oral argument. Counsel's affidavit in support of the motion for an extension acknowledged his awareness of the practice of making inquiries "within a reasonable time following the submission of a case." His failure to do so here was not due, as in Mennen, to anything the court had said, but to his own guess as to when the decision would come down, a failure which Judge Sand reasonably held was not excusable. Indeed, there is nothing in the papers to indicate that counsel had any intention of checking the docket or communicating with the judge's chambers for some time. Instead, trial counsel's sole effort to discharge the duty to ascertain when a decision was handed down by the court consisted in checking the daily edition of the Law Journal. Trial counsel was bound to realize that, despite his predictions, there was a possibility that the judge might decide the case in short order. If he chose to dispense with checking the docket and rely solely on the Law Journal to protect against the risk of not receiving notice of the decision, he was bound at least to make that reliance fully effective. In Spound v. Mohasco Indus., Inc., 534 F.2d 404, 410-11 (1 Cir.), cert. denied, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976), where counsel belatedly sought to enlarge an appeal to include matters left out of the initial notice of appeal, Judge Aldrich quoted with approval the statement in Maryland Casualty Co. v. Conner, 382 F.2d 13, 17 (10 Cir.1967), that excusable neglect calls for "circumstances that are unique or extraordinary," and from an article by Robert Stern, who, like the author of this opinion, was a member of the Advisory Committee that drafted the Federal Rules of Appellate Procedure, that the exception is addressed to "emergency situations only," Stern, supra, 41 F.R.D. at 299. Judge Aldrich went on to conclude that if excusable neglect "includes a mere palpable mistake by experienced counsel, the requirement would be meaningless." 534 F.2d at 411. See also Airline Pilots in Service of Executive Airlines, Inc. v. Executive Airlines, Inc., 569 F.2d 1174, 1174-75 (1 Cir.1978) (per curiam) (quoting Spound and reversing an order allowing a one-day extension of time to file a notice of appeal where the reason for the late filing was that counsel's secretary had diaried the date by which an appeal had to be taken as September 11 rather than September 1); Selph v. Council of City of Los Angeles, supra, 593 F.2d at 883-84 (failure to file timely appeal because counsel was moving offices, which disrupted normal calendaring practices, "does not constitute excusable neglect"); Oregon v. Champion Int'l Corp., 680 F.2d 1300, 1301 (9 Cir.1982) (per curiam) (failure to file timely appeal because notice was inadvertently sent to wrong address is not one of the "extraordinary cases" in which excusable neglect may be found).
 
 
 24
 Despite the effective presentation of appellate counsel for appellants, we thus see nothing unique or extraordinary about this case. It is claimed that there was a failure of three safety nets--notice of entry by the clerk, the mailing of a copy of the opinion, and the notice in the Law Journal. However, in light of the practice of Judge Sand's docket clerk not to mail notice of entry when the Judge's secretary mailed copies of the opinion, the first two safety nets were one. The case is thus the unremarkable one in which counsel allegedly did not receive notice from the court which, standing alone, is not a sufficient ground for finding excusable neglect, and also, through the negligence of their employee, did not become aware of the report of the decision in the Law Journal. The aura of there being something extraordinary about this case, which is sought to be created in an effort to excuse the failure of trial counsel to monitor the docket, comes largely from the lengthy explanation of why trial counsel did not believe the decision would come down until after January 1, 1985. This belief was unwarranted, as Judge Sand correctly found, and thus, as he also correctly concluded, it would have been an abuse of discretion on these facts to have granted an extension of time to file a notice of appeal. We decline to fault the district judge simply because he overread Fase when other precedents would have compelled the same conclusion.
 
 
 25
 Two further observations are required. Appellants sought relief not only under FRAP 4(a)(5) but also under F.R.Civ.P. 60(b). However, as Judge Kaufman observed in Mennen Co. v. Gillette Co., supra, 719 F.2d at 570 n. 5:
 
 
 26
 It is evident that a somewhat more stringent test must govern petitions for relief under Rule 60(b); were this not so, the binding time constraints imposed by Rule 4(a)(5) would be completely eroded by the open-ended relief offered by Rule 60(b).
 
 
 27
 See also Mizell v. Attorney General, 586 F.2d 942, 944 n. 2 (2 Cir.1978), cert. denied, 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979); Rodgers v. Watt, 722 F.2d 456, 458-60 (9 Cir.1983); cf. James v. United States, 459 U.S. 1044, 1046-47 & n. 4, 103 S.Ct. 465, 466 & n. 4, 74 L.Ed.2d 615 (Brennan, J., dissenting from denial of cert.). But cf. Hodgson v. United Mine Workers, 473 F.2d 118, 123-25 (D.C.Cir.1972) (Rule 60(b) cannot be used to circumvent time requirements of FRAP 4). Appellants' failure to establish excusable neglect under FRAP 4(a)(5) thus effectively disposes of this claim. Appellants argue also that the granting of an extension is required by Hill v. Hawes, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944). But the breadth of the holding in that case--that when the clerk had failed to notify a party of the entry of judgment, the party was entitled to have the judgment vacated by a motion under F.R.Civ.P. 60(b)--was ended, as the discussion above demonstrates, by the 1946 amendments of former F.R.Civ.P. 73(a) (now FRAP 4(a)) and of F.R.Civ.P. 77(d). See 9 Moore's Federal Practice, supra, p 204.13 at 4-93-94. Indeed, the Advisory Committee's Note to the 1946 amendment to Rule 77 begins by stating specifically that "Rule 77(d) has been amended to avoid such situations as the one arising in Hill v. Hawes...."
 
 
 28
 Affirmed.
 
 
 
 [1]
 Appellants urge in a footnote that since the district court's opinion refers only to the decision and order of the bankruptcy judge rather than the judgment, the time for appeal to this court from the judgment has not yet begun to run. We think it plain that the district court intended to affirm the judgment of the bankruptcy court as well as the decision and order on which that judgment was based; Judge Sand stated as much when, in his opinion denying the motion to file an out-of-time appeal, he characterized the earlier opinion as having affirmed "the decision, order and judgment of the Bankruptcy Court...."
 
 
 [2]
 Although the proceedings before Judge Sand were appellate in nature, we shall use this phrase to distinguish the lawyers who handled the case for appellants in the bankruptcy court and the district court from those who argued the case here
 
 
 [3]
 This reads:
 The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a). Any such motion which is filed before expiration of the prescribed time may be ex parte unless the court otherwise requires. Notice of any such motion which is filed after expiration of the prescribed time shall be given to the other parties in accordance with local rules. No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.
 
 
 [4]
 Judge Sand's finding is supported by the presence of the notation "mn" following the docket entry recording the filing of the December 4 order affirming Bankruptcy Judge Lifland's decision and order. As explained in Judge Sand's opinion, the notation means "mailed notice," and, following the ordinary practice in Judge Sand's chambers, it was placed on the docket sheet after notice of entry of an order was mailed by the clerk or a copy of the opinion was mailed by the secretary. In this case, appellee's counsel received on December 6, 1985, a properly addressed franked envelope postmarked December 4 with the return address appearing in the upper left hand corner which contained Judge Sand's opinion
 
 
 [5]
 The opposing affidavit of appellee's counsel averred that this is not uncommon
 
 
 [6]
 The Law Journal lists decisions by judges, alphabetically arranged. The decisions listed in any particular issue of the Journal may not include the decisions of all the judges for any particular day and may include decisions from more than a single day. Thus, the listing of December 3 decisions in the December 7 edition of the Law Journal began with Judge Haight. Similarly, the decisions of December 5 listed in the December 7 Law Journal went only through Judge Lowe, leaving the remaining Judges for the next day's edition
 
 
 [7]
 Appellant's trial counsel averred that Judge Sand said at the November 21 oral argument that he had not yet had an opportunity to read the briefs; counsel for appellee do not recall any such statement
 
 
 [8]
 In its entirety, F.R.Civ.P. 77(d) provides:
 Immediately upon the entry of an order of judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure.